**CURTO'S, INC., Plaintiff,**

v.

**KRICH–NEW JERSEY, INC., Allied Distributors-New Jersey, Inc., Associated Distributors-New Jersey, Inc., K–R Services, Inc., Bruno-New York, Inc. and Radio Corporation of America, Defendants.**

Civ. A. No. 861–59.

United States District Court
D. New Jersey.
April 25, 1961.

Davis & Roth, by Norman H. Roth, Jersey City, N. J., for plaintiff.

Pitney, Hardin & Ward, by William P. Reiss, Newark, N. J., for defendant Radio Corporation of America.

WORTENDYKE, District Judge.

Plaintiff, Curto's, Inc. (Curto's) sues Krich-New Jersey, Inc. and three affiliate corporations (Krich), Radio Corporation

of America (RCA) and Bruno-New York, Inc. (Bruno), charging a violation of Sections 1, 2 and 7 of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1, 2, 15, note, and the matter is presently before this Court upon motion of RCA for summary judgment.

Curto's is a New York corporation engaged, as a retail dealer, in the sale of household appliances and allied goods. Defendants Krich-New Jersey and Bruno are wholesale distributors of electrical appliances manufactured by or bearing the trademark RCA-Whirlpool. Bruno is a corporation of New York, and Krich is incorporated in New Jersey.

Curto's, who maintains a sales outlet in New York, asserts that it was unable to purchase RCA-Whirlpool appliances from Bruno at a reasonable price, and therefore established the A-A-A Appliance & Washing Machine Service, Inc. (AAA) in New Jersey, for the purpose of purchasing, through it, such products from Krich and then forwarding them to Curto's New York outlet for sale to the consuming public. In 1954, AAA was enfranchised by Krich as an RCA-Whirlpool dealer, and the above described method of operation was inaugurated.

The gist of the offense alleged in this case is a conspiracy by the defendants to nullify this method of distribution of RCA-Whirlpool appliances, and that, in furtherance of the conspiracy, Krich did in fact refuse to make further sales to AAA on or about April 11, 1958, at which time Krich cancelled AAA's franchise. The complaint in this action describes RCA as a manufacturer, promoter and seller of products, including household electrical goods and allied wares, the serial numbers of which, plaintiff says, RCA records, or has access to.

Defendant RCA's motion for summary judgment is based upon the ground that it is not a proper defendant because it is not the manufacturer of the RCA-Whirlpool products about which this controversy revolves. In support of this motion RCA has submitted the affidavit of Martin F. Bennett, its Vice-President in charge of distributor and commercial re-lations. This affidavit states that at the present time RCA does not manufacture or distribute washing machines, driers, refrigerators, ranges, or air conditioners, although in certain territory outside of the New York-New Jersey area, RCA-Victor does act as distributor for these "white goods." Prior to 1955 RCA manufactured and sold RCA ranges, and sold air conditioners manufactured for it by the Fedders Corp. In 1955 it sold its range and air conditioner business to the Whirlpool-Seeger Corp. (Whirlpool) of St. Joseph, Michigan, and received as payment therefor 20% of the common stock of Whirlpool, which interest RCA still retains. Upon this sale RCA also granted Whirlpool a license to use the name "RCA" in combination with the name "Whirlpool" on products made and sold by it. Any franchise involving the sale of these RCA-Whirlpool products, asserts Mr. Bennett, must be a Whirlpool franchise, with which RCA has no connection, because RCA franchises do not include the sale of the same products. The affiant further states that his company does not possess any RCA-Whirlpool appliance serial numbers. It is asserted by Curto's that its source of these goods was ascertained by hired detectives, who traced the products through their serial numbers to the distributor, Krich. Mr. Bennett denies that RCA ever employed any detectives for this purpose. In further support of its motion, RCA points to the deposition of Mr. Joseph Curto, who supplied the facts upon which the complaint was drawn, wherein he says that his belief that RCA conspired with the other named defendants is based upon the fact that RCA's name appears on the products in question.

In opposition to the motion, plaintiff relies upon the affidavit of Mr. Joseph Curto, and incorporates by reference the affidavits on file in a previously pending case of AAA against all of the presently named defendants. (AAA Appliance & Washing Machine Service Inc. v. Krich-New Jersey, Inc., et al., C–706–58), which charged a conspiracy among the defend-

ants resulting in the termination and cancellation of AAA's franchise. The action referred to was discontinued with prejudice, as to certain of the parties, in accordance with a stipulation filed March 12, 1959. It was formally dismissed (as to the other parties) by the Court on February 25, 1960, in accordance with General Rule 12.

The affidavit of George Getz, filed in the AAA case, recites that the affiant was the District Manager of Krich-New Jersey, Inc. for Bergen and part of Hudson Counties on the date of the affidavit, October 9, 1958, and had held this position since August, 1954. His employment duties required him to sell his employer's products to retail dealers in the allotted territory; one of those dealers being the plaintiff, AAA. Mr. Getz states that he was instructed by his superior, Mr. Fisher (General Sales Manager of Krich) to advise Mr. Frank, President of AAA, to submit false affidavits for the purpose of having "something on Frank because the pressure was becoming heavier from Bruno and it was only a question of time before Krich would have to cut AAA off." In 1958 AAA's franchise was cancelled. However, after AAA brought suit (according to Mr. Getz's affidavit) it was reinstated as a dealer, but that he (Getz) was instructed by Mr. Fisher not to call on AAA any more.

The affidavit of Milton Frank, President of AAA, in that case, corroborates that of George Getz concerning the filing of false affidavits.

The affidavit of Joseph F. Curto (in the case at bar), Secretary-Treasurer of Curto's, Inc., reflects that RCA-manufactured and RCA-branded products are distributed through the regular RCA distribution chain. He asserts that whether or not RCA manufactures the merchandise is immaterial. RCA distributors, he claims, in connection with sales contests, award prizes for the sale of RCA-Whirlpool products as well as of RCA electrical devices. The sale of any RCA-branded product is worth a specific number of points, and those earning the requisite number of total points are awarded prizes.

Mr. Curto also states that it is well known to the industry that Irving Sarnoff (now deceased), who was the head of Bruno, is the brother of David Sarnoff who is Chairman of the Board of RCA. Curto's formerly purchased RCA-Whirlpool merchandise from Dell Electric, but Mr. Curto states that this source of supply was removed after Dell Electric received a visit from an RCA representative from Camden, New Jersey, threatening to cut Dell off if it continued transshipping goods to Curto's, Inc. in New York. This, says Mr. Curto, "bears out emphatically the closest involvement of RCA in the cutting off of plaintiff's supplies of RCA-branded merchandise." In Mr. Curto's deposition he stated that the agent from Camden was a representative of the *manufacturer*.

The complaint in this action, drawn for the most part in conclusory fashion and alleging ultimate facts, also charges that RCA maintains or has access to RCA-Whirlpool product-serial numbers, which numbers enable RCA to identify the distributors to whom and through whom said products are sold. This alleged fact is denied by RCA through the supporting affidavit of Mr. Martin F. Bennett. The theory of plaintiff's case is that RCA, because of its control over Krich, was able to induce this distributor to terminate and cancel AAA's retail franchise, which cancellation deprived Curto's of its source of supply. Plaintiff further alleges that one of the means by which RCA discovered that Krich was the distributor who trans-shipped to Curto's in New York was that of tracing the RCA-Whirlpool serial numbers of RCA-Whirlpool products handled by Curto's. As mentioned above, Mr. Bennett also asserts in his affidavit that RCA franchises are not concerned with the sale of these Whirlpool products, which statement is contradicted by Mr. Curto in his opposing affidavit.

In view of the foregoing, it is my opinion that genuine issues of material fact are presented. It is clearly established that affidavits in support of a motion for summary judgment may be

considered for the purpose of ascertaining whether an issue of material fact is presented, but they may not be used as a basis upon which to decide such issues. Frederick Hart & Co. v. Recordgraph Corp., 3 Cir., 1948, 169 F.2d 580. Also, this Circuit recognizes that the search for issues of fact must also include scrutiny of the pleadings, and if a basic fact is alleged therein, it need not be reiterated upon its contradiction in an affidavit supplied by the opposing party in support of its motion. Vanity Fair Mills v. Cusick, D.C.N.J.1956, 143 F.Supp. 452; Frederick Hart & Co. v. Recordgraph Corp., supra.

I am further of the opinion that because of the serious nature of the allegations and charges which plaintiff makes, it should not be foreclosed of an opportunity to produce proof in support thereof. I find the language in United States v. General Railway Signal Co., D.C.W.D. N.Y.1952, 110 F.Supp. 422, which also involved a charge of conspiracy in violation of Sections 1 and 2 of the Sherman Act, apposite to the present case. At page 425 of that case, the Court stated:

"Conspiracy, ordinarily, is not proved by direct evidence in the manner as is an action on a written contract. The very nature of conspiracy has its base in secrecy toward the party to be duped or the law to be evaded and can only be established by piecing together the fragments of evidence as to conduct, speech and writings of the parties to the conspiracy. Interstate Circuit v. United States, 306 U.S. 208, 59 S.Ct. 467, 83 L.Ed. 610, * * *.

"If movant should submit its case to this Court upon the affidavits and pleadings now before it * * * gross injustice might be done * *. Not all of the facts which a formal trial would produce are before the Court and the Court has a slight doubt, at least, as to the facts."

Another factor properly to be considered by a Court in deciding a motion for summary judgment is whether or not the party opposing the motion has had access to the proof. Moore's Federal Practice Vol. VI, para. 56.15(5). In this action, where the proof (if there be any) will be peculiarly within the knowledge or control of the defendants, plaintiff should be granted the opportunity of proceeding with its discovery in accordance with the appropriate rules.

 It is only where there clearly are no issues in the case that a summary judgment is proper. Even in an instance where the Court may feel it will have to direct a verdict on the issues which have been raised, it should ordinarily hear the evidence, rather than attempt to dispose of the case summarily. Pierce v. Ford Motor Co., 4 Cir., 1951, 190 F.2d 910.

The motion for summary judgment is denied. Submit order.