WOODS EXPLORATION & PRODUCING COMPANY, Inc., et al.,
Plaintiffs,

v.

ALUMINUM COMPANY OF AMERICA et al., Defendants.

Civ. A. No. 14669.

United States District Court
S. D. Texas,
Houston Division.

Aug. 2, 1963.

Miller B. Walker, Jr., Nick C. Nichols, Charles F. Cockrell, Jr., and Levert J. Able, Houston, Tex., for plaintiffs.

Vinson, Elkins, Weems & Searls, David T. Searls, Raybourne Thompson, Leroy Jeffers, and Ross N. Sterling, Houston, Tex., for defendants.

INGRAHAM, District Judge.

This is a suit for treble damages and injunctive relief brought under Sections 4 and 16 of the Clayton Act, 15 U.S.C.A. §§ 15, 26. Defendants, Aluminum Company of America and Crown Central Petroleum Corporation, filed a motion for summary judgment, or in the alternative, under Rule 12(b) of the Federal Rules of Civil Procedure, for an order dismissing the action. No answer to the complaint has been filed by the defendants. Plaintiffs, Woods Exploration Company, Stanley C. Woods, and Southeastern Pipeline Company, then filed a motion to strike the defendants' motions. The cause is now before the court on the above described motions.

Plaintiffs own and operate oil and gas leases on small tracts in the Carancahua Beach Townsite in the Appling Field in Calhoun and Jackson Counties, Texas. Defendants are also leaseholders in this field, a majority of their holdings being on large tracts. Plaintiffs allege, albeit in largely general and conclusory language, a conspiracy and combination in restraint of trade and in violation of the Anti-Trust Acts.[1] The only specific act in furtherance of the conspiracy alleged by the plaintiffs in their original complaint is the filing of false nominations by the defendants. The field is regulated by the Railroad Commission of the State of Texas. This Commission requires every producer in the field to file a forecast (nomination) each month of the amount of gas that they can produce and sell from said field. It is to this matter of allegedly false nominations that the main thrust of defendants' motion is directed.

The motion for summary judgment arises under Rule 56 of the Federal Rules of Civil Procedure, the relevant parts of which are set out in the margin.[2] Generally the question to be determined

---

1. "IX. The defendants have conspired to interfere with the business of plaintiffs and to restrict the production from the town lot wells of plaintiffs in the Carancahua Beach Townsite, and the filing of said unrealistic nominations is the performance of an act of one or more of the defendants in the furtherance of said conspiracy.

"X. Defendant, Aluminum Company of America, has the intent to restrict production, to interfere with the business of producing gas from the town lot wells and intends to damage the plaintiffs by its acts in furtherance of said conspiracy.

"XI. The restraint of trade has reference to combinations, acts or practices of the defendant which interfere with the normal production and supply of natural gas and the transportation of the same from the Appling Field by the suppression of competition therein from the small tract owners and by other means and restricts the right of plaintiffs to engage in the business of producing, selling and transporting natural gas from said field."

2. "(b) A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.

"(c) * * * The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * *"

first is whether there is a genuine issue as to any material fact. Only when this has been affirmatively established by the movant is the question reached of whether judgment should be granted as a matter of law. Whether there is an issue as to a material fact is ascertained by looking to the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. It is firmly established that the summary judgment is an extreme remedy and should be awarded only when the truth is quite clear. American Ins. Co. v. Gentile Bros. Co., 109 F.2d 732 (5th Cir. 1940). And all reasonable doubts touching the existence of a genuine issue as to a material fact must be resolved against the party moving for a summary judgment. Traylor v. Black, Sivalls & Bryson, Inc., 189 F.2d 213 (8th Cir. 1951).

■ Have the defendants met their burden in the instant case? They have filed nothing other than the motion for summary judgment or dismissal and briefs of the law. There have been no depositions filed, no written interrogatories, no affidavits, not even an answer to plaintiffs' original complaint. The court is cognizant of the fact that such a motion may be made solely on the basis of the complaint. However, in such a situation every allegation of the complaint must be taken as true. Hiern v. St. Paul-Mercury Indemnity Co., 262 F. 2d 526 (5th Cir. 1959); Rogers v. Girard Trust Co., 159 F.2d 239 (6th Cir. 1947). The net result is that the court is not directed toward *any* issues, disputed or undisputed.

■ This court finds itself in much the same position as the court in Long Island R.R. v. New York Central R.R., 26 F.R.D. 145 (D.C.Alaska 1960). And the language used by that court in denying the motion for summary judgment is particularly appropriate to this case:

"[D]efendant's failure to answer leaves the Court without any indica-

tion of the factual issues in dispute. * * * It is true that plaintiffs have failed to specify the facts which they contend to be in dispute, but the burden is upon the moving party to establish the facts with respect to which there is no dispute and not upon the other party to establish the facts that are in dispute." 26 F.R.D. P. 147.

"By its bare notice of motion the defendant has failed to formulate the actual issues involved and to sustain the burden by proper affidavits or otherwise that there is no such [material] issue in the case." 26 F.R.D. P. 148.

■ Even if the above were not dispositive of the motion for summary judgment, the admonition of the Supreme Court should be kept in mind. In Poller v. Columbia Broadcasting, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), that court warned that summary procedures should be used sparingly in anti-trust litigation because the proof is largely in the hands of the alleged conspirators. In the instant case it has been generally alleged that defendants have conspired to restrict production; and it has been repeatedly held that conspiracy raises a question of fact, or at least a question of factual inference. As such, it may not ordinarily be properly disposed of on summary judgment in a civil anti-trust suit. See Dovberg v. Dow Chemical Co., 195 F.Supp. 337 (E.D.Pa.1961); Curto's, Inc. v. Krich-New Jersey, Inc., 193 F. Supp. 235 (N.J. 1961).

■ Due to the nature of this case and the failure of the defendants to establish that there is no genuine issue as to any material fact, the motion for summary judgment will be denied.

This brings the court to a consideration of the defendants' alternative motion to dismiss. Three grounds are urged by the defendants for dismissal. (1) This court is without jurisdiction of the subject matter since the plaintiffs' com-

plaint is predicated on allowables fixed by the Texas Railroad Commission. (2) The nominations made by the defendants to the Railroad Commission in an attempt to influence the action of the Commission cannot, as a matter of law, constitute a violation of the anti-trust legislation, and serve as a basis for a cause of action. (3) The plaintiffs cannot have been injured, as a matter of law, by the allocation formula of the Railroad Commission, since it allowed the plaintiffs to confiscate the property of the defendants. Each of these grounds will be considered separately.

■ (1) The defendants, in urging that this court is without jurisdiction, misconstrue the gravamen of the plaintiffs' complaint. It is urged that plaintiffs are attacking the validity of an order of the Texas Railroad Commission and that this may be done only in accordance with Section 8 of Article 6049c, Vernon's Annotated Texas Statutes.[3] The plaintiffs, however, are attacking a conspiracy under the anti-trust laws, and are alleging that one of the manifestations of the conspiracy is the submission of false nominations to the Railroad Commission. The relief prayed for does not in any way challenge the validity of an order of the Commission. Rather, this court is asked to enjoin both the conspiracy and the further submission of false nominations and to award damages for injury sustained as a result of the conspiracy. If, after trial, the conspiracy were established and relief were granted, any order of the Texas Railroad Commission would still stand. This is purely an anti-trust action, and under the applicable sections, is cognizable only

in a federal court. Jurisdiction is well founded.

■ (2) As a second ground for dismissal the defendants argue that the allegedly false nominations were made in an attempt to influence governmental action, and therefore, as a matter of law, cannot be a violation of the anti-trust legislation. The case of Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1960), is deemed to be controlling. It was charged in that suit that the defendant railroads had conspired, through a concerted publicity campaign, to obtain the passage of legislation which was detrimental to the interests of the trucking business. The court found no basis for imputing to the Sherman Act a purpose to regulate *political* activity, and held that the railroads' activities were outside the ban of the Act "at least insofar as those activities comprised mere solicitation of governmental action with respect to the passage and enforcement of laws." 365 U.S. at 138, 81 S.Ct. at 530.

First, is the conduct complained of in the instant case political in nature? If the defendants were enjoined from conspiring to submit false nominations to the Railroad Commission would they be deprived of any Constitutional right to petition or participate in the Governmental process? The answer clearly seems to be that the defendants would only be prohibited from undertaking certain joint business behavior. To subject them to liability under the Sherman Act for conspiring to restrict production or to eliminate a competitor would effectuate the purposes of the Sherman Act[4] and would not remotely infringe

---

3. "Any interested person affected by the conservation laws of this State relating to crude petroleum oil or natural gas, and the waste thereof, including this Act, or by any rule, regulation or order made or promulgated by the Commission thereunder, and who may be dissatisfied therewith, shall have the right to file a suit in a Court of competent jurisdiction in Travis County, Texas, and not elsewhere, against the Commission, or the members thereof, as defendants, to test the validity of said laws, rules, regulations or orders."

4. Suppression of competition and restriction of production both fall within the common law activities held to be "com-

upon any of the constitutionally protected freedoms spoken of in Noerr.

Secondly, even if it were assumed that the submission of false nominations were political in nature and were not within the ambit of the anti-trust legislation, this would not be sufficient grounds on which to dismiss the complaint. On page 14 of their brief in reply to defendants' motions, plaintiffs amplify their position as follows:

"We can prove the combination or conspiracy (a) to prevent any wells being drilled in the Carancahua Townsite before 1956, while they drained their minerals; (b) to prevent any production from the well that was drilled in 1956 in the Townsite for over two years by use of their control of the market and the pipe line owned by them; (c) to restrict production and sale of gas from wells that were drilled and delivered to pipelines after 1958 so as to make the drilling of wells by independents unprofitable and to require them to be shut down; and (d) to thereby restrict production and to drive the independents who have drilled wells out of business and to eliminate them as competitors and to deprive the small lot owners of any means of producing their gas under their tracts by restricting the sale of gas from said Field to thereby monopolize the same.

"*Without any reference to the false nominations* or the allowables by the Railroad Commission, we can show by illegal acts the intent to monopolize and to restrain and restrict production and to drive their

competitors out of business and drain the small landowners' gas * * *. *We are not limited to the false nominations* but can show the illegal combination and conspiracy by other acts in violation of the Anti-Trust Laws by the Defendants."
(Italics added)

This position is such that even if the submission of false nominations were felt to be political, there are other activities which are clearly commercial or economic and do not fall within the ruling of the Noerr case. The second ground for defendants' motion to dismiss, however, is predicated solely on the basis of that case. The conclusion, then, is that the second ground urged for dismissal is not sufficient because the Noerr case is not applicable, and because even if it were applicable, it is not totally dispositive of this suit.

▮ (3) The final argument advanced by defendants in support of the motion to dismiss for failure to state a claim on which relief may be granted is that plaintiffs must be injured and that plaintiffs cannot have been injured by the submission of false nominations since the allocation formula based thereon was confiscatory in favor of the plaintiffs. On May 29, 1963, the Texas Court of Civil Appeals in Austin, in the case of Railroad Commission of Texas v. Aluminum Company of America, 368 S.W.2d 818, affirmed the action of the District Court of Travis County in striking down the proration order of the Railroad Commission for the Appling Field. The reason given for invalidating the order was that it allowed the small tract operators (which include the plaintiffs in the instant case) to confiscate unreasonable

binations in restraint of trade." In enacting the Sherman Act, Congress took over the common law concept and condemned such restraints wherever they oc-

cur in or affect interstate commerce. See Apex Hosiery Co. v. Leader, 310 U.S. 469, 497–498, 60 S.Ct. 982, 84 L.Ed. 1311 (1940).

quantities of minerals underlying the adjoining land. This holding is emphasized by the defendants and should be closely scrutinized to determine if it actually means that plaintiffs have not been damaged as is alleged.

The effect of the Texas Court's decision is that the Railroad Commission must devise some other allocation formula for this gas field. This does not mean, however, that the plaintiffs were not injured by the submission of false nominations. It is unquestionable that plaintiffs would have recovered more gas under the subsisting proration order had higher nominations been filed. And it is possible that a different allocation formula might have been used, given substantially different nominations. Such a formula could conceivably have allowed more extensive production on the part of all parties concerned and not have been confiscatory in nature. But all of this is speculation. The point is simply that plaintiffs may have been injured by the activities of the defendants even though the existing allocation formula was declared invalid. It is not clear that the plaintiffs have failed to state a claim for relief.

Furthermore, activities of the defendants could be such that they threaten future injury to the plaintiffs. If such were proved, relief in the form of an injunction might be appropriate. This relief might be available even in the absence of such injury as would produce relief in the form of treble damages. Should the plaintiffs prove a conspiracy, the court has full equitable power to grant appropriate relief. Cf. United States v. United States Gypsum Co., 340 U.S. 76, 71 S.Ct. 160, 95 L.Ed. 89 (1950); United States v. Bausch & Lomb Optical Co., 321 U.S. 707, 64 S.Ct. 805, 88 L.Ed. 1024 (1944).

For the above reasons, defendants' motion to dismiss, as well as the motion for summary judgment, must be denied. The clerk will notify counsel to draft and submit orders accordingly.