Alta M. TOTTEN, Administratrix of the Estate of Robert Wayne Totten, Deceased, et al., Appellants,

v.

Bruce PARKER et al., Appellees.

Court of Appeals of Kentucky.

Dec. 15, 1967.

As Modified on Denial of Rehearing
May 24, 1968.

Joe G. Leibson, Louisville, for appellants.

Oldham Clarke, James M. Cuneo, Louisville, for Anderson Plumbing Co.

Raymond O. Harmon, William P. Swain, Boehl, Stopher, Graves & Deindoerfer, Louisville, for Bruce Parker, d/b/a Parker's Gulf Service.

Carl L. Wedekind, Jr., Lively M. Wilson, Stites, Peabody & Helm, Louisville, for Gulf Oil Corp.

MONTGOMERY, Judge.

Robert Wayne Totten, Richard M. Isham, and Donald Glass received injuries in an explosion at a service station owned by Gulf Oil Corporation and leased to Bruce Parker, doing business as Parker's Gulf Service. Totten and Isham died from their injuries. Gulf, Parker, and Anderson Plumbing Company were sued on the theory that a water heater installed by Anderson caused the explosion. Summary judgment was entered adversely to the personal representatives of the two estates and to Donald Glass, who was temporarily in charge of the station, in Parker's absence, at the time of the explosion. The administrators of the two estates have appealed, but Glass, who received injuries, has not appealed.

The first ground urged for reversal is that summary judgment should not have been granted "because a party cannot force another party to reveal his entire case merely by making motion for summary judgment." Appellants rely on Sheppard v. Immanuel Baptist Church, Ky., 353 S.W.2d 212, wherein it was said:

"CR 56 was never intended to be a substitute for a court trial in cases where a party has not had an opportunity to present all the facts which might help lead the court to a just determination of the cause."

Suit was filed about eleven months after the explosion. Summary judgment was rendered about two years after suit was filed. Numerous depositions of parties and witnesses were taken by all parties. Appellants do not point out in what area they could take further proof. From the record it appears that appellants have had an opportunity "to present all the facts." It is concluded that the ruling on the motion for summary judgment was not adjudicated prematurely.

Summary judgment was granted on motion of the defendants, now appellees. In such case the rule is that the movant has the burden of establishing that there is no issue as to the facts. The showing of the movant must exclude reasonable doubt. Robert Simmons Construction Company v. Powers Regulator Company, Ky., 390 S.W.2d 901; Conley v. Hall, Ky., 395 S.W.2d 575; Mooser v. Mason, Ky., 416 S.W.2d 355; Woods Exploration and Producing Company v. Aluminum Company of America, D.C., 36 F.R.D. 107. To sustain a summary judgment, the proof in favor of the moving party must be such as would entitle the party ultimately and inevitably to a directed verdict. See also Fuqua v. Drapo, D.C., 34 F.R.D. 111. The evidence will be reviewed in such light.

Appellants contend that the proof shows that Gulf and Parker were negligent because Parker operated, and Gulf permitted him to operate, the station in a negligent manner; that Gulf and Parker were further negligent because of an improperly installed water heater; and that Gulf and Parker were negligent because each violated the Kentucky Child Labor Act. It is also contended that Anderson was negligent in the improper installation of the heater.

The explosion occurred on Sunday, February 8, 1959. The station was located at 2106 Frankfort Avenue in Louisville. The lessee and operator, Bruce Parker, had taken the day off. Donald Glass had been left in charge. The two boys, Totten and Isham, sixteen and fifteen years of age, respectively, in their spare time had washed cars and had done other small jobs around the station, including the cleaning of the inside rooms.

The station was a typical small service station. The left portion of the front of the building contained the sales room, storage, and rest rooms, and the portion to the right contained the "lube" and wash areas. The front door opened into a sales room. Plate glass was on the left and front sides of the sales room. At the rear of the sales room there was a wooden louvered door which opened into the storage room.

The storage room contained a space heater suspended from the ceiling in the rear, a compressor, and a hot water heater, which was on the left-hand side. The water heater, which had been installed a few days prior to the explosion, was so situated that its pilot light was approximately four to ten inches from the floor.

On the morning of the accident the two boys had been summoned to the station to wash some cars. Henry Wyatt, a part-time watchman and handy man, had gone into the storage room to be out of the way. He was seated on a chair near the water heater. He was facing the sales room door. Immediately preceding the fire the boys had been engaged in mopping the floor of the sales room. Glass was working on a display in the front window and had his back to the boys and to the area of the "lube" room and storage room doors. All of the doors were closed.

With the stage set as described above, there was an explosion which filled the sales room with flames. One of the boys fell to the floor; the other remained standing. Each was able to leave the sales room under his own power. The burns received were so serious that they both died. Glass' hands, hair, and face were burned. His injuries were mostly minor.

The appellants insist that the main issue is: What ignited the explosion?

Wyatt, at one time, stated that he was blown out of his chair. However, by deposition he testified differently. He deposed that he neither heard nor saw any explosion; that he did hear one of the boys ask for assistance but thought it to be only a joke; that when he heard the boy again he saw flames through the louvered door in the sales room; and that he then left by the rear door of the stock room and ran around to the front of the filling station. Wyatt was not burned.

Appellants contend that the substance which exploded was gasoline fumes from a solution that the boys were using to clean the sales room floor. They claim that the fumes were ignited by the flame of the water heater. The lower court rejected this theory and granted a summary judgment on the basis that the existing facts merely furnished the basis for speculation and did not establish proximate cause with a degree of certainty sufficient to sustain a verdict. It is necessary to determine the proximate cause of the explosion in order to determine what the negligence consisted of and the party or parties responsible therefor.

Appellants seem to concede that Totten and Isham were using gasoline or a gasoline solution. Glass and Wyatt said that they did not know whether gasoline was used. However, the testimony of Major Foster, later State Fire Marshal, and Captain Riley, both of the Louisville Fire Department, is sufficient to establish that gasoline was being used.

Major Foster began an investigation of the fire within a few minutes after it occurred. He testified that when he entered the sales room there was a strong odor of gasoline; that he found a mop in the sales room which had the odor of gasoline and was "saturated" with gasoline; that there was a scorched place in the sales room floor where the mop had been; and that there were droplets of water and gasoline in the area where the mop was found but that there was no bucket containing gasoline in the sales room. Captain Riley corroborated Major Foster concerning the odor of gasoline in the sales room and on the mop.

The use of gasoline under similar circumstances has been held to be negligent per se and the proximate cause of a resulting explosion and fire. See Home Insurance Company v. Hamilton, E.D.Ky., 253 F.Supp. 752, for a discussion of the applicable Kentucky cases. See also Note, 55 Ky.Law Journal 886.

Appellants insist that the water heater in the storage room ignited the fumes. The heater had been installed about four to ten inches above the floor. It is argued that the fumes from the gasoline used on the sales room floor snaked along the floor under the door and came into contact with the flame in the heater which was six feet inside the storage room from the door. There was no damage to the heater and no damage in the storage room. Wyatt was situated just inside the storage room between the door and heater. He was not injured, saw no fire, and did not realize that there was anything wrong until one of the boys asked for help, and it was then that he saw flames in the sales room. All of the damage occurred in the sales room except some smoke damage on the storage room side of the louvered door. Most of the damage was in the upper part of the sales room, with some blistering of the baseboard and some scorching of the vinyl floor where the mop was found.

Major Foster opined that if the heater had ignited the fumes Wyatt would have been injured and there would have been damage in the storage room. It also was his opinion that the fumes were ignited by someone smoking in the sales room. Captain Riley agreed with him in substance.

From the testimony it seems clear that the water heater did not ignite the fumes. The evidence is insufficient to make Anderson Plumbing Company or Gulf liable on this theory, despite appellants' efforts to explain away all other possible sources which might have caused the fire.

This conclusion also eliminates any need to consider appellants' claim that the heater was defective or had been improperly installed.

Further, appellants contend that Gulf permitted Parker to operate the station in a negligent manner. Parker was Gulf's lessee under a lease which contained the following:

"The Lessee shall keep said premises, buildings, equipment, fixtures, sidewalks, approaches and driveways in good condition and repair; keep said premises, buildings, rest rooms, sidewalks, approaches and driveways clean, safe, and in a sanitary condition, and comply with all laws, ordinances, rules or regulations of constituted public authority applicable to the use and occupancy of the demised premises and the business there conducted."

\*  \*  \*  \*  \*  \*

"None of the provisions of this lease shall be construed as reserving to the Lessor any right to exercise control over the service station business and operations of the Lessee conducted upon the leased premises, or to direct in any manner how the Lessee shall conduct his business. It is understood and agreed that the entire control and direction of said activities shall be and remain in the Lessee, and neither the Lessee nor any other persons employed by him shall be deemed or considered employees or agents of the Lessor."

Appellants seek to charge Gulf with negligence, despite the fact that prior to taking over the station Parker was required to and did attend a school where he was taught service station management and safety procedures and was specifically instructed in the hazards of improper use of gasoline. Gulf made continuing efforts to see that their independent dealers were made fully aware of such dangers. When Parker took over the operation of the station under the lease, he became responsible therefor as therein provided.

The general rule is that a landlord is not liable for the negligence of a tenant in the use of the leased premises. Pinnell v. Woods, 275 Ky. 290, 121 S.W.2d 679; Cole v. Back, 305 Ky. 668, 205 S.W.2d 303. Under the circumstances here, Gulf was not liable under any of the exceptions to the rule. Cf. Green v. Asher Coal Mining Company, Ky., 377 S.W.2d 68.

Although appellants argue that Gulf should be held liable because the boys were employed in violation of KRS 339.230 and 339.240, part of the Child Labor Act, Gulf had nothing to do with the employment of the boys and is not shown to have had such knowledge of their employment in violation of the statute so as to be chargeable thereunder. There is no merit in this argument.

There is also no merit in the contention that contributory negligence is no defense because Gulf and Parker were guilty of gross negligence. Appellants rely on Bickel v. Bennett, 267 Ky. 232, 101 S.W. 2d 943, and Basham v. White, Ky., 298 S.W.2d 316. In these cases the conduct constituting gross negligence consisted of willful or reckless or intentional injury. The conduct of the appellees here cannot be so characterized. From the review of the proof so far, it is concluded that no basis for liability has been shown as to Gulf and Anderson. The summary judgment in this respect is correct.

Questions remaining are: Was Parker negligent in employing the two young boys in the work done by them? Were the boys guilty of contributory negligence? and Were their parents contributorily negligent in knowingly permitting them to be employed in violation of the Child Labor Act?

There was evidence to show that the gasoline fumes from the cleaning solution could have been ignited in many ways. There was also a showing that the boys, with Parker's knowledge may have used gasoline to clean at other times. Parker denied that gasoline had been used in the sales room but admitted that it had been used to clean the lubrication bay. Whether smoking of cigarettes by the boys or by Glass, or something else, caused the explosion, unquestionably the use of the gasoline constituted negligence. The extent to which such negligence is chargeable to the boys, Parker, and Glass, or either of them, is an issue of fact involving conflicting inferences and proof which is for the consideration of a jury. The general principles governing the laws of negligence apply here. Wood v. Dennison's Adm'r, Ky., 273 S.W.2d 374. The granting of the summary judgment was in error as to Parker. Gregory v. Paducah Midstream Service, Ky., 401 S.W.2d 40.

It is urged by appellees that not only were appellants barred from recovery by the contributory negligence of their sons but also the parents were respectively barred from recovery because of their contributory negligence in knowingly permitting their sons to work in the service station. Kentucky Utilities Co. v. McCarty's Adm'r, 170 Ky. 543, 186 S.W. 150, modifying 169 Ky. 38, 183 S.W. 237.

It is argued that such employment was in violation of the Child Labor Act. This Act in part provides that minors between the ages of fourteen and sixteen years may not be employed in the "use of * * * highly inflammable substances." KRS 339.230(2) (d). The employment of a minor between sixteen and eighteen years of age in this respect is controlled by KRS 339.240 and 339.230(2) (d). Appellees seek to charge the parents of the deceased boys with contributory negligence by permitting their sons to work in violation of the Child Labor Act.

The phrase "use of highly inflammable substances" is broad. It is unrestricted as to time, extent, or regularity of use. Gasoline, as was so sadly demonstrated here, is a highly inflammable substance. The

intent of the Act seems to have been summarized in KRS 339.230(2) (f), which forbids employment of a minor "In any place of employment, or at any occupation, that is hazardous or injurious to the life, health, safety or welfare of such minor." We are not prepared to say that a service station is necessarily such a hazardous place of employment. It will be noted that while KRS 339.230(2) (d) specifies a great number of places of employment in which minors may not be employed, service stations are not included. However, the work being done by the boys at the time of the fire did involve the use of a highly inflammable substance, and it was this particular activity which was in the forbidden category.

■ To the extent that any parent or parents may be found guilty of contributory negligence or of imputed contributory negligence, the rule is that such parent is barred from recovery under the Wrongful Death Act, KRS 411.130. This is true in cases involving violations of the Child Labor Act. Kentucky Utilities Co. v. McCarty's Adm'r, 169 Ky. 38, 183 S.W. 237, modified 170 Ky. 543, 186 S.W.2d 150; Cincinnati Times Star Company v. Clay's Adm'r, 195 Ky. 465, 243 S.W. 16; Armstrong's Adm'r v. Sumne & Ratterman Company, 211 Ky. 750, 278 S.W. 111; Caldwell v. Jarvis, 299 Ky. 439, 185 S.W. 2d 552; Lucas E. Moore Stave Company of Georgia v. Overbee's Adm'r, Ky., 262 S.W.2d 828. No merit is found in appellants' effort to distinguish these cases. Here, it cannot properly be said that the parents, or either of them, knowingly permitted the employment in violation of the Child Labor Act so as to be guilty of contributory negligence because there is no evidence that they knew or had reason to believe that their sons were engaged in the "use of * * * highly inflammable substances." The testimony is that the parents' only knowledge was that their sons were engaged in washing cars and trucks. Thus, there is no issue of contributory negligence as to the parents.

Finally, appellees urge that the parents of the deceased boys are barred from recovery by disclaimers set forth in an amended complaint supported by affidavits executed by each pair of parents. The affidavit of the Ishams is as follows:

"We, Richard N. Isham and Ruby K. Isham, husband and wife, and father and mother of Richard M. Isham, deceased, hereby disclaim and give up any interest that we might have in the Estate or our son, Richard M. Isham, so that any proceeds that come into the estate of our deceased son will be shared and divided among his brothers and sisters."

The Tottens' affidavit is similar.

Counsel for appellants in his brief says that "the purpose for filing the waiver and disclaimer was to eliminate the issue of the parents' contributory negligence by reason of their alleged acquiescence in the employment of their deceased children." The effect of such as a judicial admission has not been argued, nor is it now considered. See Bell v. Harmon, Ky., 284 S.W.2d 812; Center v. Stamper, Ky., 318 S.W.2d 853; Bartman v. Derby Construction Company, Ky., 395 S.W.2d 360.

Appellants contend that the disclaimer, in effect, is an assignment to the next of kin who would take if the mother and father had been dead at the time of the death of the child. Appellees urge that the right to take under the Wrongful Death Act is not assignable and that the disclaimer acted to terminate the litigation.

■ The persons entitled to benefits under the Wrongful Death Act, KRS 411.-130, are specifically set forth. They are to be determined as of the time of death of the person negligently or wrongfully killed. Sharp's Adm'r v. Sharp's Adm'r, Ky., 284 S.W.2d 673; Moore v. Citizens Bank of Pikeville, Ky., 420 S.W.2d 669. The Moore case and Ryburn v. First National Bank of Mayfield, Ky., 399 S.W.2d 313, are to the effect that anyone claim-

ing as a beneficiary under the statute of descent and distribution, which is embodied in KRS 411.130, must show that the persons ahead of him in the order of taking are dead. Under the provisions of KRS 411.130, 391.030, and 391.010, brothers and sisters of a deceased are entitled to a recovery only upon a showing that the deceased left no surviving spouse, child, or parent.

■ The remaining question is whether the parents against whom a defense has been asserted may circumvent that defense by an assignment. This is a matter of first impression in this jurisdiction so far as research discloses. There is a conflict of authority in regard to the assignability of a cause of action for wrongful death. 22 Am.Jur., Death, Section 11, page 613. It is immediately apparent from a reading of KRS 411.130 that the cause of action is in the personal representative for the benefit of the next of kin who share the recovery, if any. The next of kin are the real parties in interest, in that they share the recovery but they are not necessary parties to the action. Vaughn's Adm'r v. Louisville & N. R. Co., 297 Ky. 309, 179 S.W.2d 441, 152 A.L.R. 1060.

■ An action for wrongful death is a statutory one authorized by Kentucky Constitution Section 241. The statute does not provide for any assignment but is specific in providing who shall be beneficiaries of the recovery. In Dishon's Adm'r v. Dishon's Adm'r, 187 Ky. 497, 219 S.W. 794, 13 A.L.R. 625, the court refused to go outside the language of the statute. In substance it said that the Legislature has the plenary power to declare the public policy of the state in so far as it is defined by the Constitution. Under express constitutional authority so to do, the Legislature has provided that certain beneficiaries living at the time of the death of the one wrongfully killed shall share the recovery. Such beneficiaries are determinable at the time of such death. While the recovery would become a part of his or her estate upon the death of any such beneficiary thereafter, the beneficiary has no right of action for the wrongful death which would survive to his personal representative. Sharp's Adm'r v. Sharp's Adm'r, Ky., 284 S.W.2d 673. The test is whether there is such survival. 6 C.J.S. Assignments § 5, page 1052, and § 30, page 1079.

■ In a related situation, where the statutory beneficiary was the wrongdoer, the court has consistently held that there could be no recovery so far as the share due the beneficiary was concerned. See Moore v. Citizens Bank of Pikeville, Ky., 420 S.W.2d 669, and cases collected therein and in Kentucky Digest, Death, ☞32. Inasmuch as such cases hold that one who is guilty of negligence or wrong doing that proximately causes or contributes to the wrongful death is barred from recovery, it must follow that the wrongdoer cannot remove the bar by an assignment to the beneficiary, or beneficiaries, next in the line of succession. The assignments executed by the Ishams and Tottens are ineffectual efforts to circumvent the defense of contributory negligence.

It is thus concluded that the summary judgment was correctly granted as to Gulf and Anderson and was incorrectly granted otherwise.

Judgment affirmed in part and reversed in part for proceedings consistent herewith.

All concur.