Mark **HANNAH** and James F. Forester, Plaintiffs-Appellees,

v.

**STATE FARM MUTUAL INSURANCE CO., Defendant-Appellant.**

No. 17751.

United States Court of Appeals
Sixth Circuit.

Nov. 22, 1968.

A. Fred Rebman, III, Chattanooga, Tenn., for appellant, Spears, Moore, Rebman & Williams, Chattanooga, Tenn., of counsel.

Harry Berke, Chattanooga, Tenn., for appellees, Berke & Berke, Chattanooga, Tenn., of counsel.

Before WEICK, Chief Judge, and McCREE and COMBS, Circuit Judges.

McCREE, Circuit Judge.

This is an appeal by State Farm Mutual Insurance Company from a judgment of the District Court reinstating a jury verdict in favor of Mark Hannah and James F. Forester, appellees herein. The facts as recited by the District Court in its opinion of July 12, 1966 are adopted. Mark Hannah, one of the two appellees in this case, made application for an automobile liability insurance policy under the provisions of the Tennessee Assigned Risk Plan, hereinafter referred to as "the Assigned Risk Plan" or "the Plan". The risk was assigned to the appellant, State Farm. A policy was issued by State Farm pursuant to the application covering the 1956 Pontiac owned by Hannah's father. On July 21, 1961, at a time when the policy was in effect, Hannah was involved in an automobile accident with James F. Forester, the other appellee in this case. Hannah was driving a 1955 Oldsmobile which he had been regularly using for a period of several weeks prior to the accident and which he was in the process of purchasing from a third party. Forester brought suit against Hannah in the Circuit Court for Hamilton County, Tennessee to recover damages arising out of the accident. State Farm was required under the Motor Vehicle Responsibility Law to return to the State of Tennessee an SR-21 form disclaiming coverage if such a disclaimer were contemplated, but it failed to take such action. However, it did make known to Hannah its denial of coverage

and refused to defend him in this suit. Forester recovered a judgment against Hannah and both parties then instituted the present action in the District Court against State Farm for the amount of that judgment.

The trial judge submitted two special issues [1] to the jury. With respect to the first, the jury found that State Farm was estopped to deny liability to Hannah and Forester because of representations made by its agent to Hannah at the time his policy application was taken. On the second, the jury found that State Farm was estopped to deny liability to Forester by reason of its failure to deny coverage after the accident as required by the Motor Vehicle Responsibility Law of Tennessee, and returned a verdict for plaintiffs. The District Court, however, upon proper motion, rendered judgment notwithstanding the verdict on the ground that the doctrine of estoppel was not available under the law of Tennessee to bring the automobile accident within the coverage of the policy. Further, with respect to the second issue, the Court found that there was no evidence of any detrimental reliance by plaintiffs on State Farm's failure to deny coverage. Subsequently, on a motion to reinstate the verdict, the District Court reconsidered its action, reversed itself with regard to the first issue, and allowed the jury verdict for plaintiffs to stand. However, it confirmed its earlier decision as to the second issue. The Court's action with regard to both of the jury's findings is before us for review on this appeal.

The first question presented on appeal requires us to determine whether the coverage of an insurance policy, applied for and issued pursuant to the Tennessee Automobile Assigned Risk Plan and certified in accordance with the Tennessee Financial Responsibility Law, may be enlarged by the doctrine of estoppel based on representations made to the applicant by the producer of record to cover a loss which is not within the coverage provided by the insuring clauses of the contract. The second question requires us to determine whether such coverage may be enlarged by the doctrine of estoppel based upon the insurer's failure to deny coverage after the accident in the absence of evidence that either appellee had relied on this failure to his detriment.

■ In answering the first interrogatory, the jury found that Mr. Hicks, who took the application of Mark Hannah, represented that the insurance policy would cover Hannah while he was operating *any* motor vehicle. Hicks had no contractual relationship of agency with State Farm and was not held out to the public as a representative of appellant. Hicks was an agent for other insurance companies and in the past Hannah had transacted business with him in this capacity but Hicks had no relationship with appellant other than that which may be imposed because he prepared the application and forwarded it to the proper official for assignment under the Assigned Risk Plan. Further, it was not alleged nor does it appear from the record that State Farm ever knowingly ratified Hicks' representations. In the absence of an existing agency relationship between Hicks and State Farm, or ratification of Hicks' actions by State Farm, it is obvious that appellant could not be bound by Hicks' representations.

Also the authorities are consistent in holding that under similar assigned risk policies and in the absence of a statute similar to T.C.A. § 56–705, infra, one in Hicks' position is not the agent of the insurer under the facts as found by the District Court. Manufacturers Casualty Insurance Co. v. Hughes, 229 Ark. 503, 316 S.W.2d 827 (1958); Matsuo Yoshida v. Liberty Mutual Insurance Co., 240 F. 2d 824 (9th Cir. 1957); Iowa National Mutual Insurance Co. v. Richards, 229 F. 2d 210 (7th Cir. 1956).

Appellees, however, contend that Hicks' representations are attributable to

---

**1.** "Special issue" is evidently a term peculiar to Tennessee practice, and apparently refers to special verdicts submitted under Fed.R.Civ.P. 49(a).

State Farm because of T.C.A. § 56–705 which provides in part:

> Any person who shall solicit an application for insurance shall in all matters relating to such application and the policy issued in consequence thereof be regarded as an agent of the company issuing the policy, and not the agent of the insured, and all provisions in the application and policy to the contrary are void and of no effect whatever * * *.

The District Court held that as a matter of law this statute made Hicks the agent of State Farm and rendered it responsible for the representations made at the time Hannah's application was taken. On appeal, appellant questions this construction of the statute.

The law of Tennessee is applicable, Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), but we are referred to no decision of a court of Tennessee deciding this issue. Moreover, we find no direct authority in the decisions of other jurisdictions. Although the legislatures of a majority of the states have enacted statutes similar to the one quoted above,[2] the applicability of such statutes to the situation in which an insurance policy has been issued pursuant to an assigned risk plan has not yet been considered.

■■ We conclude, however, that the provisions of T.C.A. § 56–705 are inapplicable in the present case because this statute was intended to apply only when an insurance company has *voluntarily* accepted an application from a solicitor, whether or not its authorized agent, and then has *voluntarily* issued a policy thereon. In Maryland Casualty Co. v. McTyier, 150 Tenn. 691, 266 S.W. 767, 48 A.L.R. 1168 (1924), an insurance company claimed that the broker through whom the insurance had been placed did not come within the provisions of the statute because the broker had not actively solicited the application upon which the policy was issued. The insurance company also argued that, if the statute did apply, the agency relationship terminated when the policy was issued and thus notice to the broker would not constitute notice to the company after that time. The court ruled against the company with respect to both of these contentions. It stated:

> It is apparent that the Legislature purposed affording to the insured a responsible connection with the insuring company, with which he was dealing, often-times a nonresident corporate entity of uncertain address, with its identity, for purposes of legal notice, more or less obscure.
>
> The act contemplates that one *who is recognized by an insurer* as suitable and competent to handle its funds and deliver its policies is also suitable to represent it in respect to other matters arising in connection therewith. 150 Tenn. at 695, 266 S.W. at 768 (emphasis added).

The Court also quoted with approval from Pollock v. German Fire Insurance Co., 127 Mich. 460, 86 N.W. 1017 (1901), an excerpt from Schomer v. Hekla Fire Insurance Co., 50 Wis. 575, 7 N.W. 544 (1880):

> The obvious intention of the Legislature is to make an insurance company responsible for the acts of the person who assumes really to represent and act for it in these particulars, and to change the rule of law that the insured must at his peril know whether the person with whom he is dealing has the power he assumes to exercise, or is acting within the scope of his authority. * * * It seems to be designed in the clearest manner to make the company responsible to the public for the acts of one whom *it permits* to solicit insurance on its behalf, or who receives applications for insurance, makes, or aids in making, contracts of insurance, or transacts the business, whether such person has in fact authority to act for it or not. The law imposes upon the company the duty of seeing to it that none but its regular authorized agents

---

2. Couch, Insurance 462, § 26:15 (2d ed. 1960).

shall do its business or deal with the public. It is certainly not difficult for an insurance company to say to its local agents that they alone must transact its business; that they must in all cases deal directly with the insured in making insurance contracts, and not allow the interference of any stranger in its business, for whose acts it does not wish to be held responsible. That this is the plain object and intent of the statute we have no doubt. 150 Tenn. at 700, 266 S.W. at 769 (emphasis added).

The Court also quoted with approval from Continental Insurance Co. v. Ruckman, 127 Ill. 364, 20 N.E. 77 (1889) as follows:

The manifest intention was, to make such companies responsible for the acts not only of its acknowledged agents, etc., but also of all other persons who in any manner aid in the transaction of their insurance business. Nor do we see anything inequitable or oppressive in such provision. Doubtless the mere assumption of authority to act for an insurance company will not of itself charge the company with responsibility for the acts of the assumed agent. The company must in some way avail itself of such acts, so that the person performing them may be said to aid the company in its insurance business. But after a company has availed itself of the acts of an assumed agent and thus adopted them as its own, there is nothing oppressive in assuming, as against such company, the existence of the relation of principal and agent, and charging the company with responsibility for such acts. 150 Tenn. at 701, 266 S.W. at 769 (emphasis added).

The insurance company involved in *McTyier* later sued the broker, its "agent", for the loss incurred due to the latter's failure to relay the notice he had received. This failure, the company claimed, violated the broker's fiduciary duty as an agent. The Tennessee Court of Appeals held in Maryland Casualty Co. v. F. B. Hunter & Co., 8 Tenn.App. 516 (1928), cert. denied, Jan. 12, 1929 by the Supreme Court of Tennessee, that T.C.A. § 56–705 did not create an agency relationship between an insurance company and a solicitor where none otherwise existed. The Court stated:

The Act of 1907 had no purpose to affect the relation of solicitors of insurance and the company issuing the policy as between themselves. This was left to be regulated by the contract. It was only intended to apply as between the company and the insured. The statute might have been written with the same meaning without use of the word "agent". It might have provided that where an insurance company accepts the application for a policy tendered by a broker for another, and issues the policy, so far as that policy is concerned the knowledge and conduct of the broker shall bind the company and not the insured. The effect would be the same.

The company cannot complain of this. It *need not consider an application for insurance from any one except a regular agent with whom the company is well acquainted*, in whom it has implicit confidence, and who can be put under bond if so desired, but if it receives the application and issues the policy it must do so with the understanding that as to the insured, the company will be bound by the knowledge and conduct of the intermediary as if he were an agent of the company. 8 Tenn.App. at 522 (emphasis added).

T.C.A. § 56–705 has been construed liberally in favor of the insured in order to effectuate its remedial purpose. However, in the cases in which it has been so construed, the insurance companies had *voluntarily* issued policies after they had received applications. See T. H. Hayes & Sons v. Stuyvesant Insurance Co., 194 Tenn. 35, 250 S.W.2d 7 (1952); Industrial Life & Health Ins. Co. v. Trinkle, 30 Tenn.App. 243, 204 S.W.2d 827 (1947).

T.C.A. § 59–1238, *requires* all insurance companies licensed to write automobile liability insurance in Tennessee to

participate in the Assigned Risk Plan. Under its provisions, insurance companies *must* issue a policy or binder after they receive an application, regardless of the identity of the party who processed it. Section 14(A) of the Plan provides in part:

Upon receipt of the notice of designation and the deposit from the Manager, the designated carrier shall, within two working days:

1. Issue a policy or binder if all information necessary for the carrier to fix the proper rate is contained in the application form. * * *

In the absence of a clear expression of legislative intent, we are unwilling to extend vicarious liability by applying the statute to a case where the insurer had no control over the producer of record, had no knowledge of the representations made by him, and had no choice but to issue the policy once an application containing all the necessary information was received.

As further evidence that the person who processes an application (Hicks in the present case) is not to be regarded as the agent of the insurance company to which the risk is ultimately assigned, we observe that nowhere in the Plan is he referred to as an agent. Instead, he is designated as the "producer of record." The prescribed application form, which under Sections 9 and 11 of the Plan must be used for any application processed thereunder, and which was used in the present case, states immediately above the space provided for the verified signature of the applicant:

I (We) hereby agree to pay all premiums when due, and designate ........................ as pro-
(indicate firm name, if any)
ducer of record for this insurance.

I (We) understand that he is not acting as an agent of any company for the purpose of this insurance and has no authority to bind such insurance.

■ On the remaining issues, we agree with the District Court that in the absence of any evidence of detri-

mental reliance by either appellee there can be no estoppel arising from State Farm's failure to notify the State of Tennessee after the accident of its denial of coverage and, consequently, no question for the jury existed as to this issue.

For the foregoing reasons the judgment of the District Court is reversed and the case remanded with instructions to enter judgment for appellant.

COMBS, Circuit Judge (dissenting).

I respectfully dissent. The question is whether an insurance company which writes an automobile liability policy under the Tennessee Assigned Risk Plan does so subject to the Tennessee agency statute which provides that the person who handles the application for the policy shall be considered as the agent of the insuring company. T.C.A. § 56–705. The District Judge held that it does and I think he is right.

The Tennessee courts have not decided this question and apparently there is no direct authority in the decisions of other states. The statute could not be more specific. It reads:

"Any person who shall solicit an application for insurance shall in all matters relating to such application and the policy issued in consequence thereof be regarded as an agent of the company issuing the policy, and not the agent of the insured, and all provisions in the application and in the policy to the contrary are void and of no effect whatever; but this section shall not apply to licensed fire insurance brokers."

This statute was enacted in 1907 and has been upheld many times by the Tennessee courts. Moreover, it has uniformly been given a liberal interpretation. T. H. Hayes & Sons v. Stuyvesant Ins. Co., 194 Tenn. 35, 250 S.W.2d 7 (1952); Industrial Life & Health Insurance Co. v. Trinkle, 30 Tenn.App. 243, 204 S.W.2d 827 (1947).

I think that the insurance company, by availing itself of the opportunity to write insurance in Tennessee, has by operation

of law agreed to be bound by the applicable Tennessee statutes.

An insurance company has no inherent right to do business within a state. This is a privilege bestowed by the state and the privilege may be conditioned upon the company's compliance with reasonable requirements fixed by the state. 29 Am. Jur., Insurance §§ 74, 76, 78, p. 493, et seq. The refusal of a company to participate in the Assigned Risk Plan would no doubt be grounds for revocation of the privilege. California State Auto. Assn. Inter-Insurance Bureau v. Maloney, 341 U.S. 105, 71 S.Ct. 601, 95 L.Ed. 788 (1951).

The Tennessee Assigned Risk Law, Chapter 107, Public Acts of 1949, requires all insurance companies licensed to write automobile insurance in Tennessee to participate in the plan. The law was enacted for the benefit of the public in order to keep uninsured drivers off the highways. Tharp v. Security Insurance Company of New Haven, Ky., 405 S.W. 2d 760 (1966). It accomplishes a salutary purpose and should not be given a restrictive interpretation. Companies writing insurance in Tennessee are required by the Act to accept as policy holders under a quota system a minimum number of persons considered to be poor risks. I find no reason to infer a legislative intent that those companies which participated in the plan should be relieved of conditions imposed by other Tennessee statutes.

As I understand the majority opinion, it holds that the agency statute—T.C.A. § 56–705—does not apply here because the policy was not written by the company voluntarily. My difference with the majority is that I think the company, by agreeing to participate in the plan as a condition to doing business in the state, did in legal effect agree voluntarily to write this assigned risk policy.

I would affirm the judgment.