KNOX–TENN RENTAL COMPANY and Robert C. Lowe, Plaintiffs–Appellees,

v.

The HOME INSURANCE COMPANY, Defendant–Appellant.

No. 92–5745.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 19, 1993.

Decided Aug. 11, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 28, 1993.

---

Philip P. Durand (argued and briefed), Ronald L. Grimm (briefed), Ambrose, Wilson, Grimm & Durand, Knoxville, TN, for Knox–Tenn Rental Co.

Archie R. Carpenter (briefed), Carpenter & O'Connor, Knoxville, TN, for Robert C. Lowe.

Tom Corts (argued and briefed), J. Cliff Walker (briefed), Ortale, Kelley, Herbert & Crawford, Nashville, TN, for Home Ins. Co.

Before: KEITH and BOGGS, Circuit Judges, and GIBBONS, District Judge.*

GIBBONS, District Judge.

In this declaratory judgment action Home Insurance Company (Home) appeals the district court's denial of its motion for summary judgment and grant of the summary judgment motion of Knox–Tenn Rental Company (KTR) and Robert C. Lowe (Lowe). 1993 WL 532732. The ultimate issue in the case is whether Home is obligated to pay a judgment in the amount of $1,058,351.86 obtained by KTR against Lowe in the Chancery Court of Knox County, Tennessee. This issue was resolved adversely to Home in the district court. We affirm.

Home issued a professional liability policy to Lowe's employer, Jenkins Insurance, Inc., on August 8, 1983. The policy contained an exclusion which stated that the policy did not apply "to any claim arising out of any dishonest, criminal, fraudulent or malicious act, error or omission of any insured." As treasurer of Jenkins Insurance, Lowe was insured under the clause in the policy which provided coverage for the company's directors and officers.

On May 16, 1984, KTR filed suit in Tennessee's Chancery Court against several defendants including Jenkins Insurance; Ronald Jenkins, the principal of Jenkins Insurance; and Lowe. The suit alleged negligence and fraud arising out of a conspiracy by the defendants to overcharge KTR for its insurance premiums and return the overcharges in cash to KTR's Vice President and General Manager Charlie Carte. Home furnished a defense to Jenkins Insurance, Jenkins and Lowe by hiring David Smith of the Knoxville law firm of Hodges, Doughty & Carson to represent them and attempted to reserve its rights in a letter addressed to Jenkins Insurance dated June 5, 1984.

The letter began with the salutation "Gentlemen" and stated, *inter alia*:

This letter is written to notify you that our Company is reserving all its rights and defenses; not only such rights and defenses as may now exist; but in addition, all rights and defenses our Company may hereafter have under all the terms, conditions, provisions, and exclusions of policy number ABL 1509483, irrespective of whether or not they have been specifically referred to in this letter. It is to be further understood that any action heretofore taken by our Company, its agents, representatives, or attorneys in investigating the occurrence involved, and defending any lawsuit filed in connection with this matter, or in participating in any settlement discussions or negotiations, does not constitute and is not intended as a waiver of any rights or defenses available to our Company, and shall not estop our Company from asserting, at a later date, any rights or policy defenses that may be available now or at that time. All rights and defenses are hereby expressly reserved.

Home sent a copy of the letter to David Smith. Smith did not send a copy of the letter to Lowe or discuss the coverage issue with him because he viewed that as Home's responsibility, not his. Home did not send a reservation of rights letter to Lowe personally nor did it advise him formally in any other way that coverage might not be available to him under the policy.

The Chancery Court initially dismissed the case based on KTR's execution of a release in favor of Carte. After the dismissal was reversed on appeal, the second Chancery Court trial of the case resulted in a finding that the defendants, including Lowe, had defrauded the plaintiffs. Judgment was entered against the defendants on June 15, 1989. Home then informed Lowe in a letter dated July 19, 1989, that it would not pay the judgment, citing the policy's fraud exclusion.

KTR and Lowe brought suit against Home in federal court seeking a declaratory judgment that Home is estopped from denying coverage based on the fraud exclusion be-

---

* The Honorable Julia S. Gibbons, United States District Judge for the Western District of Tennes-   see, sitting by designation.

cause it had failed to reserve its rights as to Lowe and thus is obligated to pay the judgment. The parties agreed to disposition by the United States Magistrate Judge with appeal to this court. The parties filed cross-motions for summary judgment. The magistrate judge granted the motion of KTR and Lowe and denied Home's motion.

In entering summary judgment in favor of KTR and Lowe, the magistrate judge found that Home was estopped from denying coverage to Lowe because it had taken charge of and conducted Lowe's defense through entry of judgment and had failed to clearly and unequivocally inform him that it was defending him under a reservation of rights. The magistrate judge held that, under those circumstances, the prejudice to Lowe was presumed.

We review a district court's grant of summary judgment *de novo*. *Buckner v. City of Highland Park*, 901 F.2d 491, 494 (6th Cir.), *cert. denied*, 498 U.S. 848, 111 S.Ct. 137, 112 L.Ed.2d 104 (1990). Summary judgment is proper under Fed.R.Civ.P. 56(c) if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

I

Initially, Home contends that summary judgment for KTR and Lowe was inappropriate because Lowe knew that coverage might be unavailable under the policy or there is at least a genuine issue of fact as to whether he had such knowledge. Home argues that this issue is material because Tennessee law requires that Lowe must have reasonably relied on its failure to notify him that its defense to him was under a reservation of

rights. According to Home, Lowe could not have reasonably relied upon coverage and its failure to advise him of its reservation of rights because Lowe had actual or at least constructive knowledge that coverage might not be available to him under the policy.

■ Tennessee insurance law governs all substantive issues in this case. Under Tennessee law, an insurer is estopped to deny coverage where it has "taken charge of and conducted the defense of the claims asserted against the insured, without having reserved its rights by some form of agreement, stipulation or notice." *American Home Assur. Co. v. Ozburn–Hessey Storage Co.*, 817 S.W.2d 672 (Tenn.1991).[1] Home concedes that the only action it took to notify Lowe that coverage might be unavailable under the policy was to send a reservation of rights letter addressed to Jenkins Insurance. It nevertheless contends that it is not estopped to deny coverage because there is some evidence that Lowe actually knew, prior to the entry of judgment, that coverage might not be available under the policy.

■ The evidence relied upon by Home is found in Smith's deposition testimony. Smith testified that, at the courthouse during the first Chancery Court trial, he heard someone, whom Smith refused to identify, say some unspecified thing to Lowe about the "nonapplicability of the policy to the loss in question." Smith also stated that Lowe told Smith or someone else that he had nothing to contribute to a settlement. Also, on one occasion, according to Smith, Lowe asked Smith about an inheritance Lowe expected to receive. Although Smith could not remember what Lowe said to him about an inheritance, Smith "got the idea that he wanted me to tell him how to make provisions to hide money, or something like that." Home also contends that, because Jenkins

---

1. *See also Transamerica Ins. Group v. Beem*, 652 F.2d 663 (6th Cir.1981) (applying Tennessee law) (insurer estopped from denying coverage where nonwaiver agreement sent to insured referred only to reservation of rights during investigation of accident and insurer engaged counsel to negotiate with injured third party on behalf of insured); *Richards Mfg. Co. v. Great American Ins. Co.*, 773 S.W.2d 916 (Tenn.Ct.App.1988) (insurer estopped to deny coverage for compensatory damages where insurer advised insured that it was reserving its rights with respect to punitive damages only); *Maryland Cas. Co. v. Gordon*, 52 Tenn.App. 1, 371 S.W.2d 460 (1963) (insurer estopped to deny coverage under automobile liability policy where insurer investigated accident and defended lawsuits against named and additional insureds without reserving its rights as to either).

Insurance was a small company in the business of selling insurance, Lowe cannot credibly maintain that he was unaware of the fraud exclusion. No evidence suggests that Lowe was aware of the reservation of rights letter.

Although this rather sparse, nonspecific evidence arguably creates a genuine issue of fact concerning Lowe's awareness of the policy contents, we reject Home's argument that it is not estopped to deny coverage on this basis. Nothing in *Ozburn–Hessey* or the cases on which it relies indicates that an insurer who undertakes the defense of an insured can reserve its rights, and thereby avoid estoppel, other than by taking action itself to notify the insured that its defense is under a reservation of its right to deny coverage. An insured's actual knowledge of the contents of the policy is irrelevant.

▪ While Home correctly quotes language from Tennessee case law requiring reasonable reliance to create an estoppel against an insurance company in other contexts, *see Bill Brown Constr. Co. v. Glens Falls Ins. Co.*, 818 S.W.2d 1, 13 (Tenn.1991); *Provident Washington Ins. Co. v. Reese*, 213 Tenn. 355, 359, 373 S.W.2d 613, 615 (1963), the reasonable reliance analysis is not employed in the reservation of rights cases. Although the cases do not articulate any rationale for this distinction, one persuasive rationale is obvious. In the context of a failure to reserve rights, it is the undertaking of providing a defense and the omission of any mention of the possibility of a denial of coverage that constitute a misrepresentation to the insured. Thus, even an insured who has actual knowledge of the contents of his policy and the possibility that the company might deny coverage when a claim is first asserted reasonably relies upon the provision of a defense without reservation of rights as an indication that the company has waived

the coverage issue. When there is no evidence of awareness of a reservation of rights, even an insured with actual knowledge of policy contents can be said to reasonably rely as a matter of law, and no discussion of the reliance issue is required.[2]

## II

▪ Home also argues, based on several theories, that estoppel theory does not apply because notice of the reservation of rights to Jenkins and Smith constituted notice to Lowe as a matter of law.

Home offers several reasons why the notice it provided to Jenkins Insurance should be treated as notice to Lowe. First, it argues that the notice received by Jenkins Insurance should be imputed to Lowe either because he was employed by the company or because he was an additional rather than a named insured under the policy. Second, it argues that Lowe was constructively notified of its reservation of rights because Home sent a copy of the reservation of rights letter to Smith and, under Tennessee law, a client is charged with the knowledge of his attorney. Finally, Home argues that it is reasonable to assume that Lowe would have learned of the contents of the letter because Jenkins Insurance was a small company and the reservation of rights letter made reference to the same dispute in which Lowe was an individual defendant.

▪ Tennessee law imputes notice received by an agent to a principal. *Ford Motor Credit Co. v. Weaver*, 680 F.2d 451 (6th Cir.1982) (applying Tennessee law); *Hurst Boillin Co. v. Jones*, 152 Tenn. 535, 279 S.W. 392 (1926). There is, however, no support for Home's position that the reverse is true.[3] Thus, we cannot impute the notice received by Jenkins Insurance to Lowe merely because he was employed by the company.

**2.** Similarly, the Tennessee courts presume prejudice when an insurer has failed to reserve its rights. *See* discussion *infra* at III.

**3.** The cases on which Home relies merely illustrate the rule that an agent's knowledge is attributable to the principal. *See Finney v. Pan–American Fire & Cas. Co.*, 123 Ga.App. 250, 254, 180 S.E.2d 253, 254 (1971) (notice to employee dis-

claiming coverage under policy prior to undertaking defense of employee and employer sufficient to avoid estoppel); *Equity General Ins. Co. v. C. & A. Realty Co.*, 148 Ariz. 515, 517, 715 P.2d 768, 770 (Ariz.Ct.App.1985) (insurer not estopped to deny coverage where it sent a clear and unambiguous reservation of rights letter to the insured's representative).

■ There is, however, some support for Home's alternative argument that notice can be imputed to Lowe because he was an additional rather than a named insured. Home relies on *Kentucky Farm Bureau Mut. Ins. Co. v. Harp*, 423 S.W.2d 233 (Ky.1967), in which the daughter of the named insured under an automobile liability policy sought compensation for injuries suffered during a car accident in which the car was driven by her husband with the permission of the named insured. The daughter sued both her husband and her father. The insurer notified the father but not the husband that the family exclusion in the policy might bar coverage. The court held that the insurer did not need to notify the husband of its reservation of rights in order to assert the family exclusion as a defense to coverage. The court reasoned that notice to the father, the named insured, was sufficient because the husband's rights under the policy were derivative of those of the named insured.

Although the facts in *Harp* are loosely analogous to those here, the significance of the case is limited because it was decided under Kentucky law and because the relationship between the named insured and the husband in *Harp* differs from the relationship between Jenkins Insurance and Lowe. Although a named insured may or may not give other drivers permission to drive his car, a company, by definition, has officers. By issuing a policy to Jenkins Insurance and including officers in the policy's definition of "insured," Home clearly contemplated providing coverage for the officers of Jenkins Insurance.[4] Thus, we cannot conclude that Lowe's rights under the policy were merely derivative of those of Jenkins Insurance as were the husband's rights with respect to the named insured's in *Harp*.

■ Turning to Home's second argument concerning notice to Lowe, it is clear that under Tennessee law, a client is implied to have notice of facts transmitted to his or her attorney in the matter and course of the attorney's employment for the client.

*Batchelor v. Heiskell, Donelson, Bearman, Adams, Williams & Kirsch*, 828 S.W.2d 388, 394 (Tenn.Ct.App.1991); *Roberts v. State*, 546 S.W.2d 264 (Tenn.Crim.App.1977). Smith, who represented Jenkins Insurance as well as Lowe, received a copy of the reservation of rights letter Home sent to Jenkins Insurance. Home contends that receipt by Smith should be attributed to Lowe. The fault in Home's analysis lies in the fact that, even if the notice provided to Smith is attributed to Lowe, the reservation of rights letter only notified Smith that Home was reserving its rights with respect to its defense of Jenkins Insurance. Because the letter was addressed to Jenkins Insurance and made no reference to Lowe, the letter did not reserve Home's rights with respect to its defense of Lowe.

■ Home's final argument that notice should be assumed because Jenkins was a small company also fails. Tennessee law demands a high level of clarity in documents prepared by an insurer which purport to give notice to an insured of an insurer's reservation of rights. To be effective, the notice must be "clearly and fairly communicated to the insured." *Richards Mfg. Co. v. Great American Ins. Co.*, 773 S.W.2d 916, 919 (Tenn.Ct.App.1988). *See also Hardware Mut. Cas. Co. v. Higgason*, 175 Tenn. 357, 134 S.W.2d 169, 177 (1939) (clear notice to insured will protect the insurer). Because documents purporting to give notice are prepared by the insurer and the insurer is in a better position to understand their meaning, those documents are strictly construed against the insurer. *Transamerica Ins. Group v. Beem*, 652 F.2d 663, 666 (6th Cir. 1981).

The reservation of rights letter Home sent to Jenkins Insurance simply did not provide the level of clarity necessary to provide notice to Lowe. It is not reasonable to assume that a letter addressed to a company as a whole will come to the attention of a particular officer or employee. That is particularly true here, since Lowe's role with Jenkins was

---

4. Home's reliance on *Harp* is further complicated by the fact that it stipulated that Lowe is "an individual named insured under the language of the policy defining insured" in a pre-trial order submitted to the district court. Despite the binding nature of this stipulation, Home now asks us to disregard the stipulation and treat Lowe as an additional insured.

an accountant for the business, a role he also performed for at least one other company owned by Ronald Jenkins. He was not involved in all aspects of the business of Jenkins Insurance. Moreover, even if Lowe read the letter or its contents somehow came to his attention through co-workers,[5] he reasonably could have concluded that Home's reservation of rights applied to the company and not to him in light of the fact that the letter was addressed only to Jenkins Insurance, although he and several others had been named as individual defendants in the same suit.

## III

■■■ Home next argues that the magistrate judge erred in granting summary judgment in favor of Lowe and KTR because the record creates a material issue of fact as to whether Lowe suffered any actual prejudice as a result of Home's failure to notify him directly of its reservation of rights. The magistrate judge concluded that "where an insurer takes charge of the insured's defense, the insured is cast in judgment and the insured never receives adequate notice from the insurer that it is reserving defenses on the policy until after judgment is entered," prejudice to the insured is conclusively presumed.

The Tennessee Supreme Court's decision in *Ozburn–Hessey* supports the magistrate judge's conclusion. Although the court in *Ozburn–Hessey* found that the insured had suffered actual prejudice, it did so only after holding that:

> The rule [regarding an insurer's failure to inform an insured that it was defending pursuant to a reservation of rights] by its very language establishes the presumption

of prejudice. Otherwise, there would be no necessity for its promulgation.

817 S.W.2d at 675. Such a conclusive presumption of prejudice comports with the result reached in the other Tennessee cases which involve an insurer's attempt to deny coverage after defending the insured without reserving its rights as well as the position taken by the general treatises.

In *Beem,* we stated that "the insured [must] be presumed to be prejudiced where the company enters into active negotiations with the claimant without the insured's having an opportunity to be represented by counsel." 652 F.2d at 665–66 n. 3. In *Maryland Cas. Co. v. Gordon* and *Richards Mfg.,* the Tennessee Court of Appeals estopped the insurers from denying coverage without finding or even discussing prejudice.[6]

As for the general treatises, Couch explains that an insured seeking to bar an insurer from raising a defense of noncoverage after participating in the insured's defense must show prejudice but that:

> Where an insurer, without reservation and with actual or presumed knowledge, assumes the exclusive control of the defense of the claims against the insured, it cannot thereafter withdraw and deny liability under the policy on the ground of noncoverage, prejudice to the insured by virtue of the insurer's assumption of the defense being, in this situation, conclusively presumed.

14 George J. Couch, *Couch Cyclopedia of Insurance Law* § 51:85 (2d ed. 1982). Annotated Law Reports notes the same distinction. Annotation, *Liability Insurance–Waiver–Estoppel,* 38 A.L.R.2d 1148, 1157–61 (1954).

---

5. Lowe denies he read the letter, and there is no evidence in the record to the contrary. Moreover, there is no evidence that the letter came to his attention in any other way.

6. The one Tennessee case on which Home relies, *Hannah v. State Farm Mut. Ins. Co.,* 403 F.2d 375 (6th Cir.1968) (applying Tennessee law), is easily distinguished. In *Hannah,* the court held that the insurer was not estopped to deny coverage for claims filed pursuant to an automobile liability policy where the insurer had failed to notify the state after the automobile accident of its intention to deny coverage. The court concluded that estoppel did not lie because there was no evidence that the insured had detrimentally relied on the insurer's silence. Unlike the situation presented here and in *Ozburn–Hessey,* however, the insurer never undertook the defense of the insured; in fact, the court observed that "[the insurer] did make known to Hannah its denial of coverage and refused to defend him in this suit." 403 F.2d at 376.

Because Home exerted complete control over Lowe's defense, up to and including trial and the entry of judgment against him, prejudice to Lowe should be presumed. While this rule might seem a harsh one for insurers under certain circumstances, in this case its application is entirely appropriate. Analyzing how a case might have gone differently for an insured if he had been aware of a reservation of rights is an inherently speculative undertaking.[7] Although we cannot know whether the result would have been different for Lowe, a number of things which in all likelihood would have gone differently are obvious. Lowe would surely have benefited from separate, individual counsel, who could have exploited Lowe's limited role in the fraudulent scheme and the fact that he received no benefit from it. An effort to settle the claim against Lowe for a small amount might have been pursued. Instead, Lowe's defense was geared to avoidance of liability for all defendants, not a differentiation of Lowe's position. The absence of separate counsel also resulted in Lowe losing the opportunity to make fully informed decisions about the conduct of the case. *Cf. American Cas. Co. v. Shely*, 314 Ky. 80, 83–84, 234 S.W.2d 303, 305 (1950) (insured's lost opportunity to engage separate counsel and manage own defense is prejudicial in itself, apart from any effect the loss of that opportunity may have had on the outcome of the litigation); *Safeco Ins. Co. v. Ellinghouse*, 223 Mont. 239, 725 P.2d 217 (1986) (same); *Faber v. Roelofs*, 311 Minn. 428, 250 N.W.2d 817 (1977) (same). *See also Cozzens v. Bazzani Bldg. Co.*, 456 F.Supp. 192 (E.D.Mich.1978).

## IV

■ In a final and entirely separate argument, Home contends that the magistrate judge erred in denying its motion for summary judgment because Lowe admittedly participated in the scheme to defraud KTR and equity provides no relief for those with "unclean hands." Generally, Tennessee law bars a party with unclean hands from obtaining relief in a court of equity. *Fiedler v. Potter*, 180 Tenn. 176, 172 S.W.2d 1007, 1011 (1943); *Farmers & Merchants Bank v. Templeton*, 646 S.W.2d 920, 924 (Tenn.Ct.App. 1982). As the Tennessee Supreme Court explained in *Hogue v. Kroger Co.*, 213 Tenn. 365, 369, 373 S.W.2d 714, 716 (1964):

> [A] complainant, who has been guilty of unconscientious conduct or bad faith, or has committed any wrong, in reference to a particular transaction, cannot have the aid of a Court of Equity in enforcing any alleged rights growing out of such transaction.

■ Although Lowe may have unclean hands as a result of his involvement with the scheme to defraud KTR, the rights Lowe seeks to enforce in this action grow out of his contract with Home (and Home's inaction regarding it), not the scheme against KTR. Because Home does not contend that Lowe acted fraudulently with respect to its agreement to insure Lowe, the doctrine of unclean hands cannot bar Lowe's claim.[8]

Accordingly, we conclude that the magistrate judge correctly granted summary judgment in favor of KTR and Lowe and denied summary judgment to Home. The decision of the district court is AFFIRMED.

■

---

7. In fact, one strong argument supporting a conclusive presumption of prejudice is the difficulty of proving prejudice, given the hypothetical nature of the undertaking. *See Bogle v. Conway*, 199 Kan. 707, 433 P.2d 407 (1967); *Griggs v. Bertram*, 88 N.J. 347, 443 A.2d 163 (1982); *Merchants Indem. Corp. v. Eggleston*, 37 N.J. 114, 179 A.2d 505 (1962); *Transamerica Ins. Group v. Chubb & Son, Inc.*, 16 Wash.App. 247, 554 P.2d 1080, 1083 (1976).

8. The cases relied on by Home do not undercut this reasoning. Although Tennessee courts have relied on the doctrine of unclean hands to bar claims for relief where the plaintiff acted fraudulently, in all of those cases the plaintiff's fraud formed the basis of the plaintiff's claim for relief. *See Continental Bankers Life Ins. Co. v. Simmons*, 561 S.W.2d 460, 464–65 (Tenn.Ct.App.1977); *Thomas v. Hedges*, 27 Tenn.App. 585, 590, 183 S.W.2d 14, 16 (1944). *See also O'Brien v. O'Brien*, 734 S.W.2d 639, 643 (Tenn.Ct.App. 1987). Moreover, at least one court has explicitly rejected the application of the doctrine of unclean hands in the context of a defense without a reservation of rights. *See Merchants Indem. Corp. v. Eggleston*, 37 N.J. 114, 129, 179 A.2d 505, 514 (1962).