IOWA NATIONAL MUTUAL INSURANCE COMPANY, Plaintiff-Appellee,

v.

Vernon RICHARDS and Nora Richards, Defendants-Appellants.

IOWA NATIONAL MUTUAL INSURANCE COMPANY, Plaintiff-Appellee,

v.

Larry R. WHITESIDE, Defendant-Appellant.

Nos. 11574, 11580.

United States Court of Appeals Seventh Circuit.

Jan. 25, 1956.

Ross E. Morris, McConnell, Kennedy & McConnell, Peoria, Ill., for defendants-appellants Vernon Richards and Nora Richards.

Stuart, Neagle & West, Galesburg, Ill., for defendant-appellant Larry R. Whiteside.

Edwin V. Champion, Peoria, Ill., for appellee.

Before DUFFY, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

DUFFY, Chief Judge.

In this action, plaintiff sought a declaratory judgment that it was not bound by its contract of insurance dated December 9, 1953 with Larry Whiteside to furnish liability protection to him arising out of an automobile collision on March 27, 1954. The District Court found for the plaintiff.

Prior to December 9, 1953, Whiteside was the owner of a 1949 Buick Automobile insured by the Suburban Insurance Company. That Company cancelled its policy of insurance and Whiteside was forced to secure liability insurance through the Illinois Automobile Assigned Risk Plan. He contacted insurance agent, Gay McGill, who prepared the proper application form which Whiteside executed, and which was sent to the Chicago office of the Plan. In the application Whiteside designated McGill as the "Producer of Record" of such insurance. On December 9, 1953, plaintiff issued its binder to Whiteside covering the 1949 Buick. The insurance policy FCA 12–303–380 was issued for a period of one year commencing December 9, 1953, and covering the 1949 Buick.

On December 9, 1953 Whiteside traded in the 1949 Buick for a 1952 Pontiac. No notice of this change of vehicles was ever received by plaintiff. On March 10, 1954, Whiteside traded the Pontiac for a 1948 Buick. Prior to March 27, 1954, the McGill Insurance Agency was advised that Whiteside had acquired the 1948 Buick. This information was not immediately forwarded to plaintiff because, according to McGill, he was waiting for the motor and serial numbers which must accompany a request for a change in endorsement.

On March 27, 1954, while driving the 1948 Buick, Whiteside was involved in a collision with an automobile driven by defendant Vernon Richards, which resulted in serious injuries to Vernon Richards and Nora Richards, and death to Frances M. Short. On March 29, 1954, plaintiff received a telegram from Gay McGill reading: "Larry Whiteside 12 - 303-380 involved in accident nite of March 27. Woman in other car killed, five in hospital." On April 1, 1954, plaintiff received an undated letter from McGill asking that coverage under the Whiteside policy be transferred to a 1948 Buick giving the motor number.

On April 7, 1954, plaintiff issued an endorsement covering the 1948 Buick effective April 1, 1954 which was five days after the date of the accident.

The principal question in this case is what relationship existed between plaintiff and Gay McGill or the McGill Insurance Agency. There was no formal agreement or understanding between McGill and plaintiff insurance company. The only business contact McGill ever had with plaintiff was in connection with the Whiteside policy which had been assigned to plaintiff by the Manager administering the Illinois Automobile Assigned Risk Plan.

Defendants argue that McGill, who was the "Producer of Record", was not a broker in the ordinary sense; that he was a go-between and actually represented both plaintiff and Whiteside. Defendant urges that Whiteside had no choice in naming his insurance carrier, nor did McGill, as would be true if McGill were a broker. Defendants argue that McGill thus became a special agent for the plaintiff insurance company for the purpose of receiving notice of accidents, change of vehicles, and other information essential to servicing the risk.

■ ■ We think the District Court was correct in finding as a fact that neither Gay McGill nor McGill Insurance Agency was an agent of the plaintiff with reference to the Whiteside policy. We do not dispute defendants' contention that it may be established that a person is an agent of the insured or the insurer, or of both parties, without showing any formal contract of agency. However, there is nothing in this record to establish that McGill was an agent for any one other than Larry Whiteside.

Defendants professed to find something about the operation of the Illinois Automobile Assigned Risk Plan whereby the "Producer of Record" becomes the agent of the insurance company which issues the policy under that Plan. The statutory provisions with respect to the Assigned Risk Plan appear in Sec. 58m, Chap. 95½, Ill.Rev.Stats.1955. Insurance carriers transacting a public lia-

bility business in Illinois are required to subscribe to an Assignment Risk Plan approved by the Director of Insurance of the State of Illinois. The Director of Insurance is required, by the statute, to "establish rules and regulations for the administration of the provisions" of the statute. The Director of Insurance is also required to make assignments of applicants for coverage under the Plan to all insurance carriers on an equitable and proportionate basis.

■ In the application for insurance under the Assigned Risk Plan there appears "19. I (We) hereby designate as producer of record for this insurance"— followed by a blank space. Apparently it is optional whether any such designation be made. However, in the Whiteside application the name of "Gay McGill" was written in the space. We do not think the Assigned Risk Plan made McGill the agent of the plaintiff. We hold that notices given by Whiteside to Gay McGill or to the McGill Insurance Agency were not notices to plaintiff insurance company.

The insurance policy issued by plaintiff contained the following provision: "(1) *Described Automobile*—the motor vehicle or trailer described in this policy; * * * (4) *Newly Acquired Automobile*—an automobile, ownership of which is acquired by the named insured who is the owner of the described automobile, if the named insured notifies the company within thirty days following the date of its delivery to him, and if either it replaces an automobile described in this policy or * * *."

■ Defendants contend that the 1948 Buick replaced the 1949 Buick and is, therefore, covered by the policy. Defendants rely upon Kaczmarck v. La Perriere, 337 Mich. 500, 60 N.W.2d 327. In that case the defendant insured a Packard automobile against public liability. About two months later he traded the Packard for an Oldsmobile but gave no notice to the company. About seven months later he sold the Oldsmobile and purchased a Pontiac, and within thirty days of acquiring the Pontiac, notified

the Insurance Company asking for a transfer of the policy to the Pontiac. The insurance company agent assured him that the Pontiac was covered by the insurance policy. The accident occurred while the defendant was driving the Pontiac, subsequent to the time that notice had been given. We think the Kaczmarck case is clearly distinguishable because as hereinbefore indicated the notice to McGill in the instant case was not a notice to the insurance company.

In Schaller v. Aetna Casualty and Surety Company, 280 App.Div. 988, 116 N.Y.S.2d 729, affirmed, 306 N.Y. 725, 117 N.E.2d 908 where notice of the acquisition of a third automobile was not given to the insurance company, the court held there was no coverage.

The District Court's Findings are supported by substantial evidence, and we think the Conclusions of Law are correct. The judgment of the District Court is

Affirmed.