MARKERT, EXR., *v.* BOSLEY, ET AL.

(No. 662003—Decided February 23, 1965.)

*Messrs. McAfee, Hanning, Newcomer, Hazlett & Wheeler,* for plaintiff, James M. Markert, executor, and for defendants, Dorothy M. Bosley and James M. Markert.

*Mr. William B. Saxbe,* attorney general, and *Mr. James S. Gallas,* for Louis J. Schneider, Jr., tax commissioner.

ANDREWS, Chief Referee. This is an action for a declaratory judgment brought by James M. Markert, executor of the

estate of Mrs. Francine M. Markert, who died on October 31, 1963. Mrs. Markert was a widow, and she is survived by two children, Mrs. Dorothy M. Bosley (nee Dorothy Mae Markert) and James M. Markert, who, as noted above, is the executor.

The controversy arises over the ownership of 471 1/3 shares of the capital stock of Fundamental Investors, Inc., and 678 2/3 shares of Massachusetts Investors Trust, the latter evidenced by a certificate or certificates of beneficial interest. For simplicity, I will refer to the securities of both companies as "shares," "stock," or "securities." All the shares are registered in the name of the testatrix.

Mrs. Bosley, the daughter, and James M. Markert, the son, each claims to be the owner of 235 2/3 of the above shares of Fundamental Investors, Inc. (hereinafter sometimes referred to as "Fundamental"), and 339 1/3 of the above shares of Massachusetts Investors Trust (hereinafter sometimes referred to as "Massachusetts").

Defendants named in the petition are Dorothy M. Bosley, James M. Markert (individually), the United States of America, the Commissioner of Internal Revenue, and Louis J. Schneider, Jr., Tax Commissioner of Ohio. On their own motion, the United States of America and the Commissioner of Internal Revenue were dismissed as parties defendant for want of jurisdiction. The petition states that they and the Tax Commissioner of Ohio were joined as having an interest in the action because of the federal estate tax and Ohio inheritance tax.

The dismissal of the United States of America and the Commissioner of Internal Revenue raises the question whether I should proceed to render a declaratory judgment or dismiss the action on my own initiative.

The question arises because of Revised Code Section 2721.07, providing that courts of record may refuse to render a declaratory judgment when such judgment would not terminate the uncertainty or controversy giving rise to the proceeding. See, also, *Walker* v. *Walker*, 132 Ohio St. 137; *Gutelius* v. *Gillen*, 15 O. O. 51 (Com. Pl. 1939).

It is questionable whether the uncertainty or controversy would be terminated insofar as the dismissed parties are concerned. See Revised Code Section 2721.12, stating in part that

"No declaration shall prejudice the rights of persons not parties to the proceedings." On the other hand, plaintiff has complied with the first part of that section, requiring that all persons who have or claim any interest which would be affected by the declaration be made parties.

Moreover, it is entirely possible that the federal tax authorities will accede to the decision reached in this action. This possibility becomes greater when we consider the position taken by the Tax Commissioner of Ohio, whose interests are analogous to those of the Commissioner of Internal Revenue.

Further, by Revised Code Section 2721.05 (C), plaintiff, as executor, may have a declaration of rights or legal relations to determine any question arising in the administration of the estate. It is important to the executor to know as promptly as possible whether the shares in question belong to the estate or to the individual claimants. Whether to entertain or refuse to entertain a declaratory judgment action rests largely in the sound discretion of the trial court. *Ohio Casualty Ins. Co. v Ross*, 15 O. O. 2d 196, 172 N. E. 2d 349 (Com. Pl. 1960) ; Borchard, *Declaratory Judgments* 257, 258, 270, 273 (2d ed. 1941). Under the circumstances of this case, I think that the efficient administration of the estate necessitates my rendering a declaratory judgment despite lack of jurisdiction over the United States of America and the Commissioner of Internal Revenue. The question of the effect of my judgment on the dismissed parties is not before me, and I express no opinion about it. In any event, their interest in the ownership of the shares relates only to the federal estate tax.

The essential allegations of the petition relating to the claimed ownership of the stock by Mrs. Bosley and James Markert may be summarized as follows.

In January, 1951, Fred S. Markert, father of Dorothy and James, and husband of the testatrix, purchased 300 shares of "Fundamental" and 300 shares of "Massachusetts." Fifty of the shares of "Fundamental" and 50 of the shares of "Massachusetts" were purchased for Dorothy (now Mrs. Bosley) and were paid for out of her own money. Similarly, 50 of the shares of "Fundamental" and 50 of the shares of "Massachusetts" were purchased for James and paid for out of his own money.

In each instance, the money was drawn from the child's savings account. Inasmuch as the children were then minors, the shares bought for them were issued to and registered in the name of their mother, the testatrix. As a matter of fact, all 300 shares of each security were issued and registered in her name.

To the certificate for 50 shares of "Fundamental" bought for Dorothy, a memorandum was attached. It was dated February 18, 1951, and signed by the testatrix. It certified that these 50 shares were the property of Dorothy. An identical memorandum was attached to the 50 shares of "Massachusetts" bought for Dorothy. Identical memoranda were also attached to the certificates representing the shares bought for James, likewise stating that the shares were his property.

Through stock splits and capital gain distributions, the original 300 shares of "Fundamental" have increased to 1414 shares, valued on the inventory and appraisement at $14,479.36, and the original 300 shares of "Massachusetts" have increased to 2036 shares, valued at $31,374.76.

Dorothy and James filed exceptions to plaintiff's inventory and appraisement, which included all the shares, each asserting a claim to 235 2/3 shares of "Fundamental" and 339 1/3 of "Massachusetts."

The 235 2/3 shares of "Fundamental" represent 50 of the original shares purchased, as increased through stock dividends and capital gain distributions. The 339 1/3 shares of "Massachusetts," likewise represent 50 of the original shares purchased, as increased through stock dividends and capital gain distributions.

Plaintiff prays for a declaratory judgment determining ownership of the 471 1/3 shares of "Fundamental" and the 678 2/3 shares of "Massachusetts," one-half of which are claimed by Dorothy to be her property, and one-half of which are claimed by James to be his property.

The hearing on the exceptions to the inventory and appraisement has been continued indefinitely, undoubtedly because of the present action.

Separate answers were filed by James and Dorothy. They are identical. I will use Dorothy's to indicate the contents. She admits the truth of the allegations and statements of the petition. She asserts ownership in 235 2/3 shares of "Funda-

mental" and 339 1/3 shares of "Massachusetts," despite the fact that the certificates were issued to and registered in the name of the testatrix. She prays that the Court declare her the owner of the above shares.

The answer of the Tax Commissioner of the State of Ohio, denies, for want of knowledge, the facts set forth in the petition, and asks that upon the hearing or disposition of the cause, his rights be fully protected.

On November 19, 1964, the parties, excluding those dismissed for want of jurisdiction, filed a stipulation of facts, signed by their attorneys. Attached to the stipulation are several exhibits, which are expressly made part of the stipulation. In addition, it is stipulated that the facts contained in all the exhibits are true.

It is elementary that when an adverse party is willing to stipulate to the truth of a certain allegation, the party having the burden of proving that allegation is relieved from proving it. In other words, the stipulation renders proof unnecessary. See 9 Wigmore, *Evidence,* Sections 2588, 2590, 2591 (3d ed. 1940), stating, in Section 2588, that the stipulation is "a substitute for evidence," and "does away with the need for evidence." See also 83 C. J. S., *Stipulations,* Sections 10 *f.* (7) and 12; *Peters Motors, Inc.,* v. *Rodgers,* 161 Ohio St. 480 (stipulations of ownership of automobile).

Professor Wigmore discusses stipulations under the heading "Judicial Admissions." To me, this latter title more accurately describes the nature of a stipulation of facts, which, in effect, is a judicial admission by a party of facts otherwise requiring proof by his opponent.

Although ordinarily a stipulation should be accepted by the court, situations may arise in which the court properly refuses to accept it. See, for example, 9 Wigmore, *Evidence,* Sections 2590, 2591 (3d ed. 1940); 83 C. J. S., *Stipulations,* Sections 10 *f.* (7), 17, 23, 24, 31, 34, 35*a*, 35*b* (1) (2); 50 Am. Jur., *Stipulations,* Sections 12, 14; *Peiter* v. *Degenring,* 136 Conn. 331, 71 A. 2d 87 (1949); *Attorney General* v. *Rice,* 64 Mich. 385, 31 N. W. 203 (1887); *Wright Lumber Co.* v. *Ripley County,* 270 Mo. 121, 192 S. W. 996 (1917); *Mead Johnson & Co.* v. *Breggar,* 410 Pa. 408, 189 A. 2d 866 (1963).

At page 90 of 71 Atlantic Second, the court, in *Peiter* v. *De-*

*genring, supra,* referring to the point that under the circumstances of a particular case, the court may be justified in disregarding a judicial admission, puts it this way:

"This follows from the fact * * * that a judge is not a mere umpire in a forensic encounter but a minister of justice."

In the present case, Mrs. Dorothy Bosley and James Markert, daughter and son of the testatrix, want the court to declare that they own stock which is registered in the name of the testatrix. It is obvious that a stipulation by *them* of facts which they have the duty of proving is not a judicial admission. The same is true with reference to James Markert as executor. We cannot conclude that as executor he wants a result directly opposite to that which he seeks as an individual. Thus, even in his position as executor, he is not adverse to the claim that the stock belongs to his sister and him.

The United States of America and the Commissioner of Internal Revenue are adverse to the claim of the children, but at their own request they have been removed from the action. This leaves only the Tax Commissioner of Ohio. Clearly, his interest is adverse to that of the children, for if the stock claimed by them is removed from the estate, the Ohio inheritance tax will be less. Consequently, the signing of the stipulation by his counsel constitutes a judicial admission, evidently made voluntarily and after due consideration.

What does the Tax Commissioner of Ohio, through his counsel, judicially admit?

A comparison between the petition and the stipulation discloses that the Tax Commissioner admits every essential fact alleged in the petition. In addition, the stipulation gives some explanatory details not contained in the petition. For instance, the bank account (No. 397) from which the withdrawal was made to pay for Dorothy's stock was a joint account in her name and her mother's name, and the account from which payment for James's stock was made (No. 1195) was a joint account in his name and his mother's. All the money deposited in No. 397 was the property of Dorothy, coming from earnings, dividends, and cash gifts. All the money in No. 1195 was the property of James, and likewise came from earnings, dividends, and cash gifts. Their mother, the testatrix, had her own separ-

ate savings account in a different bank, in which she deposited her own money. The children's funds were placed in joint accounts with their mother because they were minors. At the time of the stock transactions, Dorothy's father told her that he was transferring some of her savings account funds into mutual investment stocks.

The stipulation also goes into further detail about the issuance and certificate numbers of the various shares, but there is no need to encumber this opinion with those details. The same is true with regard to other minutiae.

However, a look at the exhibits helps to clarify the facts. And it must be recalled that the stipulation admits the truth of "the facts contained in all exhibits."

Four of the exhibits (A, B, F, and G) are the broker's confirmation slips showing the original purchases on January 17, 1951, of two lots of 50 shares each in Fundamental Investors, Inc., Common, and two lots of 50 shares each in Massachusetts Investors Trust, Common, all sold to Mrs. Francine M. Markert, the testatrix. Each 50 shares of "Fundamental" cost $1,016.50 and each 50 shares of "Massachusetts" cost $1,880.50.

Exhibit C shows the withdrawal on January 19, 1951, of $2,897.00 from the joint and survivorship account (No. 397) of Francine M. Markert and Dorothy Mae Markert. This was the exact amount necessary for the purchase of the 50 shares of "Fundamental" and the 50 shares of "Massachusetts" as per the aforementioned confirmations. Exhibit H shows the same thing in the joint and survivorship account (No. 1195) of "Jim" Markert and Francine M. Markert.

Exhibits D, E, I, and J are the memoranda attached to the certificates of stock, certifying ownership in Dorothy and James, respectively. All four are in the same form. I will use Exhibit D as an illustration. It reads as follows:

"This is to certify that the attached stock certificate representing 50 shares of Fundamental Investors Inc. Cert. 96760 stock is the property of Dorothy Mae Markert having been purchased with funds belonging to Dorothy Mae Markert. It is registered in my name for convenience only inasmuch as Dorothy Mae Markert is now a minor.

Dated: 2/17/51          Signed: Francine M. Markert."

Exhibit E is for the 50 shares of "Massachusetts" bought for Dorothy. Exhibit I is for the 50 shares of "Fundamental" bought for James, and Exhibit J is for the 50 shares of "Massachusetts" bought for James. Admittedly, Francine M. Markert, the testatrix, signed these documents.

Exhibit K is further proof of the stock purchases for the children. These purchases are here shown on Mr. Fred S. Markert's day book entries for January 17, 1951, as explained in Item IX of the stipulation.

From the stipulation, including the exhibits, it is clear that the following determinative facts are "judicially admitted."

Fifty shares of each stock were bought with Dorothy's money and for her account, and this stock was her property.

Fifty shares of each stock were bought with James's money and for his account, and this stock was his property.

All the shares were issued to and registered in the name of Francine M. Markert, the testatrix, for convenience, inasmuch as the children were minors at the time of purchase.

Through stock dividends and capital gain distributions, the shares of each stock have increased to the number claimed by Dorothy and James, respectively.

In view of the admitted facts, it is clear that when Mrs. Markert died, Mrs. Dorothy M. Bosley was the beneficial owner of 235 2/3 shares of Fundamental Investors, Inc. and 339 1/3 shares of Massachusetts Investors Trust, and that James M. Markert was the beneficial owner of the same number of shares of each.

Whether or not the judicially admitted facts, including the exhibits, are sufficient to constitute an express trust need not be decided, for, in their brief, counsel for Mrs. Bosley and James Markert do not claim that an express trust was created. They stress the fact that although the stock in question was issued in the name of the testatrix, it was purchased with the moneys of Dorothy and James. Because of this, they argue, a purchase money resulting trust arose by operation of law, with the mother taking title as trustee for her minor children.

Counsel's contention is correct; in fact, the situation here involved is one of the classic examples of a resulting trust. See 4 Scott, *Trusts,* Section 404.1 (2d ed. 1956); *Restatement, Trusts*

(Second), Section 440 (1959). And where the property is paid for from the child's money, and title is taken in the name of a parent, there is no presumption of a gift by the child to the parent. Rather, the presumption is that the parent holds the property in trust for the child. Bogert, *Trusts and Trustees,* Section 460, pages 604, 613, 614 (2d ed. 1964). There is nothing in the record to rebut the inference of a resulting trust.

### Conclusions of Law

1. Defendant Dorothy M. Bosley is the beneficial owner of 235 2/3 shares of Fundamental Investors, Inc., capital stock; and she is also the beneficial owner of 339 1/3 shares of Massachusetts Investors Trust, evidenced by a certificate of beneficial interest. All the above shares are registered in the name of Francine M. Markert, the testatrix. These shares were held by the testatrix, as trustee, in trust for the said Dorothy M. Bosley. The said Dorothy M. Bosley, as owner, is entitled to have the legal title to such shares transferred to her forthwith.

2. Defendant James M. Markert is the beneficial owner of 235 2/3 shares of Fundamental Investors, Inc., capital stock; and he is also the beneficial owner of 339 1/3 shares of Massachusetts Investors Trust, evidenced by a certificate of beneficial interest. All the above shares are registered in the name of Francine M. Markert, the testatrix. These shares were held by the testatrix, as trustee, in trust for the said James M. Markert. The said James M. Markert, as owner, is entitled to have the legal title to such shares transferred to him forthwith.