The **FIDELITY AND CASUALTY COM-PANY OF NEW YORK**, a corporation, Plaintiff,

v.

Clinton L. **THOMAS**, Jerry L. Sherum, Charles Sherum, a minor, Maggie Sherum, Mary Nell Sherum, and Nezzie Mae Dillard, Defendants,

Horace Mann Mutual Insurance Company, a corporation, Intervenor.

Civ. A. No. 806–E.

United States District Court, M. D. Alabama, E. D.

June 29, 1970.

Charles E. Porter, Montgomery, Ala., for plaintiff.

Tom Radney, Alexander City, Ala., for all defendants except Clinton L. Thomas.

Thomas F. Parker, Montgomery, Ala., for Horace Mann Mutual Ins. Co.

H. Gerald Reynolds, Alexander City, Ala., for Clinton L. Thomas, defendant.

PITTMAN, District Judge.

The Fidelity and Casualty Company of New York, Inc., (hereinafter referred to as F. & C.) filed this suit seeking a declaratory judgment in their favor of non-liability and no coverage of the defendant, Clinton L. Thomas, for his liability for damages arising out of an automobile accident on, to wit, January 1, 1969, wherein the other named defendants subsequently filed suits against Thomas, seeking damages arising from the accident. Judgments have been rendered in the Circuit Court of Tallapoosa County, State of Alabama, in the amount of $37,500.00 in favor of some of the defendants against the defendant, Clinton L. Thomas. Some of the cases are still pending.

The defendant Thomas, and others, called on plaintiff F. & C. to defend defendant Thomas in these suits. They refused to do so. The intervenor, Horace Mann Mutual Insurance Company (hereinafter referred to as Horace Mann) defended Thomas and also called upon F. & C. to aid in the defense and to participate in an offer of settlement made by Horace Mann. These requests were denied.

It is the contention of F. & C. that they have no responsibility for the defense of these cases or to pay any judgment rendered, or which may be rendered therein.

The defendant, Thomas, contends that he purchased insurance coverage from F. & C. through the Adams Insurance Agency, its agent in Alexander City, Alabama; that he made a deposit toward the premium on the policy to be issued by the plaintiff to him; and, that the representations and actions subsequent to the initial purchase bound the plaintiff to afford liability coverage as well as physical damage on the automobile which he was driving at the time of the accident made the basis of this suit.

In open court, the intervenor Horace Mann agreed it was liable to the defendant Thomas for liability coverage to him arising from the automobile accident January 1, 1969, which involved the other defendants.

It was further agreed that the only questions to be presented to the court concerning the intervenor Horace Mann's interest were: (1) whether their coverage was primary or secondary as between Horace Mann and F. & C., (2) whether or not F. & C. is liable, and, if so, if the liability is to be prorated between F. & C. and Horace Mann and the formula on which the proration is to be based, and, (3) if F. & C. is liable, whether or not they should pay all or a portion of expenses Horace Mann incurred in defending these suits in the amount of $2,388.55.

## FINDINGS OF FACT

Defendant Clinton L. Thomas is a black male textile worker of Tallapoosa County, Alabama, approximately 52 years of age. He has lived most of his life in that county.

W. C. Adams, who owned the Adams Insurance Agency, Alexander City, Tallapoosa County, Alabama, had been in the insurance business approximately 47 years there. He and the defendant Thomas have known each other all of Thomas' life. Thomas at one time was employed by a brother-in-law of Adams with whom Adams had some business connection. Within the period of time in question, Thomas had an active account with Adams on an insurance coverage for a house trailer. Thomas had also brought insurance business to Adams for a clubhouse in which he was interested and had brought insurance business of his mother to Adams.

There existed a dependent and trusted business relationship on the part of Thomas with Adams.

In December 1968, Thomas purchased an automobile from a local dealer. He arranged credit with the Avondale Credit Union. They advised him it would be necessary for him to have collision, fire, and theft coverage with the credit union being named on the policy before they would furnish money for the car. On December 5, 1968, he went to the Adams Insurance Agency and talked with the secretary. He told her he was buying a car and wanted insurance.

On December 7, 1968, he returned to the agency. During one of the two visits, the secretary went over the application with him, and it was agreed to apply for fire, theft, and collision without liability coverage. On an inquiry as to the premiums for the insurance, she told him she would determine it and put it on his account. On December 7, 1968, he signed the application, plaintiff's Exhibit #7. On December 10, 1968, he went to the agency a third time and made a $15.00 payment on the insurance applied for. Mr. Adams was at the office at least one of these times, but the secretary processed the application. Mr. Adams witnessed and signed the application with Thomas. The application was mailed to the Birmingham office of F. & C. On December 13, 1968 the Birmingham office returned the application and advised the Adams Agency that they *would not give the coverage without liability coverage.* This letter was received by Mr. Adams and he noted on the bottom of the letter, as was his custom, words to the effect "add liability insurance" or "liability added." (See defendant Dillard's Exhibit #1.) Although the evidence is conclusive from plaintiff's witnesses that this letter and its endorsement was only in the possession of the Birmingham office and the Adams Agency, it is missing and cannot be accounted for. The plaintiff contends there was more than one application, but again, by the plaintiff's testimony, the applications were only in the possession of the Birmingham office and the Adams Agency. This second critical document, if it existed, is missing and is unaccounted for. On December 28, 1968, or December 29, 1968, Thomas again went to the Adams Agency and made a payment on his insurance account, including an additional $15.00 on the insurance he had applied for on the automobile. That second $15.00 was refunded after the accident had been reported to the plaintiff or its agents.

Thomas' application, plaintiff's Exhibit #7, shows a request for liability coverage in the amount of $10,000/$20,000, which was filled in by the Adams Agency on the return of the application and re-submitted to F. & C. in Birmingham.

Between December 10 and December 29, the Adams Insurance Agency also took an application for insurance on the automobile of Thomas' wife. On Thomas' visit to the Adams Agency office December 28 or December 29, when he made a payment on his insurance account, he was told by Adams "he had insurance" *on his car.*

The evidence is uncontradicted that Mr. Adams had the authority to bind the company at the time the application was made, and he did, in this case, prior to the January 1, 1969 accident.

On January 2, 1969, Thomas reported the January 1 accident to Mr. Adams.

The evidence tends to indicate that Mr. Adams told Thomas, and an attorney representing some of the defendants making claims against Thomas, that Thomas had insurance including liability.

The evidence is uncontradicted that on January 30, 1969, after the accident, F. & C. issued a policy of insurance for fire, theft, and collision covering the period December 10, 1968—January 2, 1969, and paid Thomas $650.00 for damage to his automobile. The policy was issued after notice of the accident, after examination of Thomas' vehicle by an adjuster, and *contrary to the letter of December 13 in which they stated they*

*would not write coverage for this* vehicle *unless liability coverage was included.*

The evidence is uncontradicted that the intervenor expended $2,388.55 in expenses in the trial of the cases in State Court.

## CONCLUSIONS OF LAW

From the facts stated hereinabove, it appears and F. & C. conducted its insurance business in Alabama, at least partly, through its affiliations with independent insurance agents.

> "An insurance company, if a corporation, can act only through its agents since, being a legal entity, it cannot otherwise acquire knowledge or information or carry out its corporate functions." 2 Couch on Insurance 1433, Section 502.

It further appears that W. C. Adams was a general agent for F. & C. within the meaning of Title 28, Section 85(21)(a), Code of Alabama 1940 (Recomp. 1958).

> "An insurance agent is a natural person who acts as, holds himself as, or claims to act as a representative of any insurer to accept risks, countersign and issue policies of insurance."

> "Under Alabama and general insurance law, test to determine whether a general agency exists is whether agent has power to bind insurer by his contract of insurance or to issue policies on his own initiative, or to accept risks, and if agent has actual authority to do those things, he is a general agent, and he may then bind (the) company in other ways, such as by oral contract, by waiving certain policy or application provisions and the like." Continental Casualty Co. v. Holmes, 266 F.2d 269, (C.A. 5, 1959), certiorari denied 80 S.Ct. 140, 361 U. S. 877, 4 L.Ed.2d 114.

The Alabama cases approving verbal contracts for insurance have, on occasion, added the proviso that "all the terms of the contract are agreed upon." Liverpool and London and Globe Ins. Co. v. McCree, 210 Ala. 559, 98 So. 880 (1924). In Globe and Rutgers Fire Ins. Co. v. Eureka Sawmill Co., 227 Ala. 667, 151 So. 827 (1934), the court narrowed its scrutiny to include:

(1) The rate of premium.

(2) The duration of the policy.

(3) The nature of the risk.

(4) The property.

(5) The location of the property.

It is upon the necessity of agreement to the above terms by both parties to the contract that the plaintiff bases its argument. Plaintiff contends, quite correctly, that Clinton Thomas was personally unaware of one of the necessary terms, the nature of the risk, and that, as a consequence, there was no contract. If we are to adhere strictly to the rule of *Eureka Sawmill,* some doubt might be cast upon the contract even as it relates to fire, theft, and collision insurance since it appears that Thomas was never aware of the rate of premium.

In advancing this argument plaintiff in the case sub judice misapprehends the totality of the facts as they emerged from the testimony. As a result of their lengthy association in the community, Clinton Thomas had come to rely on the expertise of W. C. Adams in the insurance field, a field in which he, Thomas, was almost totally devoid of knowledge. It was Thomas' custom to have Adams choose the insurance company and the type of coverage merited by the circumstances, seemingly without regards to the cost. Nothing in their past transactions would indicate any likelihood that Thomas would not concur in Adams' judgment once again. Nor does Thomas' failure to choose liability during this interview with Miss Patricia Mann militate against such a conclusion. To label this act, or failure to act, as a refusal of liability insurance is not consistent with the tenor of all their dealings. If the dealings had terminated in a refusal and refund after the initial interview of Thomas with Miss Mann, upon F. & C.'s December 13, 1968 return of the application and advice to their Alexander City

agent that they would not give coverage without liability coverage, it could quite properly be held there was no coverage as plaintiff contends.

This did not happen. Mr. Adams, a trusted insurance agent of Thomas, advised F. & C. to include liability coverage and subsequently told Thomas he had insurance. Clinton Thomas had placed his faith in W. C. Adams.

■ Courts have recognized the authority of an agent to do whatever is reasonably incidental to his engagement. 44 C.J.S. Insurance § 169, p. 859. While it might reasonably be inferred that Thomas' request was for fire, theft, and collision, and that Adams was authorized to add liability as a necessary incident, it is the further finding of this court that Thomas, as was his custom, left the decision as to the insurance company and the type of coverage within Adams' discretion.

■ While the plaintiff urges upon us the contention that custom and usage cannot be used to prove a contract, City Mortgage and Discount Co. v. Palatine Ins. Co., Ltd. of London, Eng., 226 Ala. 179, 145 So. 490 (1933), the existence of a contract is admitted in the case sub judice. It is well settled in Alabama that custom and usage can be used to prove the nature and extent of the contract terms. Reynolds Bros. Lumber Co. v. W. S. Newell Const. Co., 284 Ala. 352, 224 So.2d 899 (1969).

While Adams acted, for many purposes, as the agent of the insurer, the complex realities of the insurance industry will not allow too narrow a view of his role. As was recognized by the Supreme Court in Osborn v. Ozlin, 310 U.S. 53, 60 S.Ct. 758, 84 L.Ed. 1074,

"The agent is tied to his company. But his ability to 'produce' business depends upon the confidence of the community in him. He must therefore cultivate the good will and sense of dependence of his clients. He may finance the payment of premiums; he frequently assists in the filing and prosecution of claims; he acts as mediator between insurer and assured in the diverse situations that arise."

On those occasions that the relationship of an independent insurance agent vis a vis insurer and insured has been scrutinized, the lower courts have not always been in accord. It has been most frequently held that the independent agent is the agent of the insurer. However, the rule is usually applied for the protection of the insured against irregularities arising out of the various transactions between the agent and the insurer. United States Fire Ins. Co. v. Cannon d/b/a C & C Well Service, 349 F.2d 941 (C.A. 8, 1965).

Other courts, including the Alabama court, have made references to the existence of dual agency in this area, see Aetna Ins. Co. v. Koonce, 233 Ala. 265, 171 So. 269 (1936). Some courts have held that the agent is the agent for the applicant-insured until he places the business with a particular insurer. Northwest Underwriters Ins. v. Hamilton, 151 F.2d 389 (C.C.A. 8, 1945). Other courts have adopted the more flexible view that a person may be an agent of insured, of insurer, or both without any formal contract. Iowa National Mutual Insurance Co. v. Richards, 229 F.2d 210 (C.A. 7, 1956); Western Casualty and Surety Company v. Lund, 234 F.2d 916 (C.A. 10, 1956).

■ Without comment as to the wisdom of the practice, one may choose to delegate the authority, to an independent insurance agent, to evaluate and fill one's insurance requirements without necessity of subsequent ratification.

■■ Where, as in the case sub judice, coverage of a particular vehicle is extended by more than one policy, and the policies contain mutually repugnant "other insurance" clauses, proration of the loss should be required between the two insurers. Motor Vehicle Casualty Co. v. Atlantic National Ins. Co., 374 F. 2d 601 (C.A.Fla.1967). Pro rata application of the two policies requires division of the loss, or liability, between the two insurers in accordance with the lim-

its of their respective policies. Fireman's Fund Insurance Co. v. Reliance Insurance Co., 291 F.Supp. 618 (D.Or. 1968); Weekes v. Atlantic National Ins. Co., 370 F.2d 264 (C.A. 9, 1966). As a result, the plaintiff, Fidelity and Casualty Company of New York, is liable in the amount of $10,714.28, or 2/7 of the total liability. Horace Mann Mutual Insurance Company bears 5/7 of the total, or $26,785.72.

It is therefore ordered, adjudged, and decreed that the petitioner, Fidelity and Casualty Company of New York, is liable for coverage of the defendant Clinton L. Thomas for his liability for damages arising out of an automobile accident on, to wit, January 1, 1969.

It is further ordered, adjudged, and decreed that the liability as between Fidelity and Casualty Company of New York, Plaintiff, and Horace Mann Mutual Insurance Company, Intervenor, shall be prorated for said automobile accident as hereinabove set out.

It is further ordered, adjudged, and decreed that said Horace Mann Mutual Insurance Company, Intervenor, have and is hereby awarded a judgment in the amount of $1,194.22 expended by said Horace Mann Mutual Insurance Company in the trial of cases arising hereunder in the State Court.

By its order of January 8, 1970, this court issued a temporary injunction by which the defendants, Clinton L. Thomas; Jerry L. Sherum; Charles Sherum, a minor; Maggie Sherum; Mary Nell Sherum, and Nezzie Mae Dillard were enjoined from proceeding with any claims against Clinton L. Thomas and the Horace Mann Mutual Insurance Company in the Circuit Court of Tallapoosa County at Alexander City, Alabama, pending a hearing before this court on a Declaratory Judgment. Judgment having been entered as hereinabove set out, it is hereby ordered, adjudged, and decreed that the previous order of January 8, 1970, be vacated and the injunction be dissolved.

Costs are hereby taxed against the plaintiff.