154 N.J. Super. 240 (1977)
381 A.2d 91
MARY M. PEARSON, ANDRE V. PEARSON AND DENISE L. PEARSON, PLAINTIFFS,
v.
SELECTED RISKS INSURANCE COMPANY, HARRY LASKER AND C. ROBERT APPLEBY T/A C. ROBERT APPLEBY GENERAL INSURANCE, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided December 2, 1977.
*242 Mr. Peter U. Lanfrit for plaintiffs (Messrs. Edward J. Dolan, attorney).
Mr. Gary C. Algeier for defendant Selected Risks Insurance Company (Messrs. Schenck, Price, Smith & King, attorneys).
Mr. Peter A. Piro for defendant Harry Lasker (Messrs. Haskins, Robottom & Hack, attorneys).
Mr. Bertram E. Busch for defendant C. Robert Appleby t/a C. Robert Appleby General Insurance (Messrs. Busch & Busch, attorneys).
COHEN, J.C.C., Temporarily Assigned.
Selected Risks Insurance Company issued an auto liability policy to Mary Pearson covering a 1972 Datsun owned by her. During the policy period Andre Pearson, a family member, had an auto accident causing injury to one Lasker. Andre was driving a 1967 Volkswagen registered to and used by Denise, Mary's daughter, and purchased with money Denise borrowed from Mary. Lasker sued Andre as driver and Denise as owner. They called upon Selected Risks to defend and cover them. After it refused to do so the Pearsons started this action *243 against the carrier and an insurance broker. It is here on Selected Risks' motion for summary judgment.
The Pearsons assert that Mary's Selected Risks policy covers the Volkswagen because (1) it is an after-acquired automobile and (2) representations made by an employee of C. Robert Appleby, the insurance broker through whom Mary Pearson secured the policy.
As to the first matter, the Selected Risks policy has specific language. It extends coverage to
* * * an automobile, ownership of which is acquired by the named insured or his spouse if a resident of the same household if it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the named insured and such spouse * * *
and if notice is given to the company within 30 days of acquisition. The focal language requires that "ownership" of the new automobile be "acquired by the named insured." The simple fact here is that ownership was not acquired by the named insured, but by her daughter, Denise. The car was registered in Denise's name and, absent fraud, it is there the inquiry ought to end. See Merchants Ind. Corp. v. Eggleston, 37 N.J. 114 (1962). Coverage should not turn on such hard-to-pin-down matters as who paid for the car or whether it was intended as a loan, or whether the loan was repaid, or whose use of the car was principal or exclusive. There are questions that a simple and easily measurable standard answers best, and "ownership" for auto insurance purposes is one of them. National Union Fire Ins. Co. v. Falciani, 87 N.J. Super. 157 (App. Div. 1965); Mitchell v. Coyne, 521 P.2d 383 (Utah Sup. Ct. 1974); Herendeen v. U.S.F. & G Co., 19 Ariz. App. 399, 507 P.2d 1011 (App. Ct. 1973); Williams v. All State Ins. Co., 2 Ohio Misc. 117, 204 N.E.2d 256 (C.P. 1965).
The second branch of the Pearsons' attack has to do with a conversation Mary says she had with an employee of the broker, Appleby. The background is this: Mary went to *244 Appleby's office for the purpose of obtaining insurance for her 1972 Datsun. Appleby was not an agent of Selected Risks He undertook to act on behalf of Mary in the effort to place the insurance. Rider v. Lynch, 42 N.J. 465 (1964). See N.J.S.A. 17:22-6.1 and 6.2. It is not clear whether he tried and failed or liminally recognized the impossibility of placing the insurance. In any event, on January 11, 1973 Appleby and Mary Pearson filled out and submitted an application under the Assigned Risk Plan. In the application form Mary designated Appleby as the "producer of record." Just above her signature as applicant appeared the words, "I understand he is not acting as an agent of any company for the purpose of this insurance and has no authority to bind such insurance."
Briefly, the process of placing an assigned auto risk starts with submission of the prescribed form application. After arrival at a central office maintained by the Plan, it is assigned to one of the insurance carriers who write auto insurance in New Jersey. They are required to accept assigned risks on a rotating basis in rough proportion to the amount of voluntary business they write in the State. The assigned carrier may or may not be one with whom the "producer of record" has previously dealt.
The Plan assigned Mary to Selected Risks, which, in due course, issued a policy to her. She had applied to pay premiums in installments, and Selected Risks told her she could make her payments to Appleby, who was designated in that instruction to be an "agent." In the policy itself the space to be filled in with the name of the agent reads "Selected Risks Insurance Company."
In October 1973, Mary says, she was told by an Appleby employee that a car that Mary was to buy for her daughter Denise would be covered by the Selected Risks policy for an additional $47 premium. The car was purchased in early October and Andre had his accident in it on October 14.
What occurred between Appleby and the Pearsons is hotly disputed. It appears Appleby may have received the $47 *245 on the day after the accident and on the same day requested Selected Risks not to add Denise's car to Mary's policy, but rather to add Denise as an additional driver of Mary's car.[1] Selected Risks' argument is that whatever happened between Mary and the broker does not affect it because Appleby was not acting as its agent at the time and so nothing he said could bind Selected Risks.
If Appleby's office told Mary that Denise's new car could be added to the policy (which, incidentally, was not possible) and even if she paid Appleby a premium for the new coverage, it would not create a contract of insurance with Selected Risks. Where an insurer involuntarily undertakes to insure an assigned risk, the licensed broker who produces the business that is assigned to the insurer does not become an agent of the insurer for the purpose of writing additional business for the assigned risk by the insurer and the broker does not speak for the insurer in its relationship with the assigned risk.[2] That this is so before the policy is written and delivered by the insurer is made plain by Rider v. Lynch, 42 N.J. 465 at 475 (1964); See also, Hannah v. State Farm Mut. Ins. Co., 403 F.2d 375 (6 Cir.1968); Manufacturers Casualty Ins. Co. v. Hughes, 229 Ark. 503, 316 S.W.2d 827 (Sup. Ct. 1958); Yoshida v. Liberty Mut. Ins. Co., 240 F.2d 824 (9 Cir.1957). That it remains so throughout the assigned relationship has been decided in other states. A notice of accident to the broker who produced an assigned auto policy, without more, was held not to be notice to the insurer in Gabriel v. Attigliato, 60 Misc.2d 536, 303 N.Y.S.2d 399 (Sup. Ct. 1968); in Bradford v. Travelers Ind. Co., 301 A.2d 519 (Del. Super. Ct. 1972); *246 Employers Cas. Co. v. Mireles, 520 S.W.2d 516 (Tex. Civ. App. 1975). J. Inmon Insurance Agency v. Kentucky Farm Bureau Mut. Ins. Co., 549 S.W.2d 516 (Ky. Ct. App. 1977). Notice of a replacement vehicle made to the "producer of record" of an assigned risk was held not to be notice to the insurer under Illinois law in Iowa Nat. Mut. Ins. Co. v. Richards, 229 F. 2d 210 (7 Cir.1956). To the contrary, generally, are two Florida cases, Nationwide Mut. Ins. Co. v. Mason, 218 So.2d 185 (D. Ct. App. 1969); American Cas. Co. of Reading, Pa. v. Castellanos, 203 So.2d 26 (D. Ct. App. 1968). Both of them contain factual elements beyond those present here. Their conclusions, in any event, would bear further discussion. Driver v. Tennessee Farmers' Mut. Ins. Co., 505 S.W.2d 476 (Tenn. Sup. Ct. 1974), is also to the contrary. But it was decided under a statute very different from New Jersey's.
The majority rule seems the sound one. One could take the view that insurers dealing with the public through store-front independent agencies cannot expect the public to distinguish between agents who bind and brokers who merely negotiate. From that one could conclude that if insurers do not want to be bound by brokers' conversations, the public ought to be told so and told who it can listen to and who not. But I do not conceive that to be the law today. Absent actual authorization, then, and absent such acts as would clothe Appleby with the indicia of authority to act for it, Selected Risks is not bound by whatever Appleby's people said to Mary Pearson.
There are no material disputed facts. Selected Risks is entitled to judgment and should present an order for summary judgment on notice.
NOTES
[1] The correct premium to add Denise as an additional driver was not $47 but $17, and Appleby refunded $30 to Mary.
[2] Perhaps the assigned insurer may make the broker its agent for the collection of premiums. See N.J.S.A. 17:22-6.2a. But that would not create an agency for all purposes.