**OVALDO GRAHAM, Plaintiff**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Defendant**

Civil No. 192/82

District Court of the Virgin Islands

Div. of St. Croix

March 7, 1983

WARREN B. COLE, ESQ. (ISHERWOOD, HUNTER & DIEHM), Christiansted, St. Croix, V.I.

GEORGE S. ELTMAN, ESQ. (BRYANT, LENAHAN & ELTMAN), Christiansted, St. Croix, V.I.

O'BRIEN, *Judge*

## MEMORANDUM OPINION

The Court is called on in this case to determine as a matter of law when a carrier's obligation to provide insurance coverage commences under the Assigned Risk Plan adopted in conjunction with the Compulsory Automobile Liability Insurance Law of the Virgin Islands (20 V.I.C. § 701 et seq.). Initially, the Court must determine whether the "producer of record", who processes the insurance application, is an agent for the insurance carrier capable of altering the carrier's obligations under the Assigned Risk Plan.

### I. FACTS

Compulsory insurance became a reality in the Virgin Islands in 1976 when 20 V.I.C. § 701 et seq. became effective. As is usually the case, provision was made for those motor vehicle owners who could not obtain insurance through regular channels. This was by means of an "Assigned Risk Plan" ("the plan") adopted by the V.I. Commissioner of Insurance in cooperation with the insurance companies,

pursuant to 20 V.I.C. § 711. The plan became effective on February 1, 1976.[1]

The plan provided for the distribution of the policies among those companies writing automobile insurance in the Virgin Islands and it fixed the earliest effective date for any coverage under the plan. The earliest effective date for coverage of an applicant was to be 12:01 a.m. of the day following the date the application for coverage was mailed to the plan office.[2]

Ovaldo Graham, the plaintiff ("Graham"), went to the offices of Young-Clark Insurance, Ltd. ("Young-Clark") in Christiansted, St. Croix, late in the afternoon of September 5, 1978. He supplied the necessary information for completion of the application for motor vehicle insurance coverage under the plan. Plaintiff's Exhibit F. He signed the application just below the language which stated that he understood that Young-Clark "is not acting as an agent of any company for the purpose of this insurance and has no authority to bind such insurance." Graham was then given a green-colored Certificate of Insurance which is duplicated below.

---

[1] The plaintiff argues that the plan could not become effective until filed and published according to 3 V.I.C. § 933. However, 3 V.I.C. § 911(b)(3) excepts those rules or regulations directed "to a specifically named . . . group of persons . . . ." The group of persons to whom the plan is directed are those carriers who are part of the plan, and those drivers who were specifically not able to obtain coverage elsewhere. Therefore, that section does not apply. Further, it is questionable whether the plan actually is a "rule or regulation" within the meaning of 3 V.I.C. § 911.

[2] Section 12 of the plan states that coverage shall be effective "at 12:01 a.m. on the day following the date of mailing of the application to the plan as shown by the postmark on the transmittal envelope." Plaintiff's Exhibit N.

---

### CERTIFICATE OF INSURANCE

I hereby certify that there is in effect a motor vehicle liability policy, as defined in Chapter 47 of the Virgin Islands Code, for the benefit of the person (owner) required to furnish proof of coverage by satisfactory liability insurance.

Name of Insurance Company (not agent) (1) V.I. Automobile Assigned Risk Plan

Policy Number (2) _____Binder_____ Effective Date (3) _9/6/78–9/6/79_

Named Insured (owner) _____Ovaldo Graham_____

Description of Vehicle Covered:

| FOR DEPARTMENT USE ONLY |
| --- |

Year Make Vehicle Identification No.

1973 Mazda 10648-SN3A-120682

Registration Number _____

Date Sent to Insurance Company for Verification _____

(If more than one vehicle, use separate form for each)

Name of Insurance Agent License No.

Young-Clark Insurance, Ltd. IA-129-78

_____ _____
Signature of named insured Date

(1) If application for insurance has been made to the Virgin Islands Automobile Assigned Risk Plan, in lieu of company name enter "Virgin Islands ARP".

(2) If policy number has not been assigned, enter the word "binder".

(3) If an assigned risk application was written, the effective date shall be 12:01 a.m. on the day following the date of mailing of the application to the Plan.

VIC 1 (2/76) AS APPROVED BY THE COMMISSIONER OF INSURANCE

---

It is undisputed that Young-Clark mailed the application to the plan that same day, September 5, 1978, and that eventually Defendant Insurance Company of North America ("INA") was assigned to provide coverage under the requirements of the plan. The parties also agree that no one from Young-Clark made any oral representations to Graham, and that the application for coverage and the Certificate of Insurance constitute the entire transaction as between them. Graham also paid cash for the cost of coverage under the assigned risk plan for one year.

As the business day drew to a close on September 5, 1978, Graham left the insurance broker's office with the Certificate of Insurance in hand. About five hours later, at approximately 10:45 p.m. that same evening, he was operating his motor vehicle and became involved in an accident. At the time, his vehicle was not registered for operation in the Virgin Islands. Eventually, an action was commenced against him by a person claiming injuries from the accident. Through his

491

personal attorney at the time, the defense of the action was tendered to INA which declined on grounds of lack of coverage. Graham then initiated this action to have himself declared an insured under the provisions of the policy issued by INA. The parties have cross-moved for summary judgment, each claiming the right to judgment as a matter of law, the facts not being in dispute.

There are several essential legal issues to be resolved. First and foremost is the question whether Young-Clark could commit INA to provide coverage any earlier than is required in the plan itself. Secondarily, we will resolve the issue of when coverage commenced, notwithstanding whether Young-Clark was INA's agent. Graham asserts that coverage attached immediately upon his payment of the first year's premium and his receipt of the Certificate of Insurance from Young-Clark. He had a reasonable expectation of immediate coverage, he claims, and if there is any ambiguity as to when he was covered, this must be resolved against the insurance carrier and in his favor.

INA, moving for cross summary judgment, asserts that Young-Clark was not its agent and could not commit it to any earlier coverage than is provided in the plan. Also, INA states that the date of commencement of coverage is clear on the face of the Certificate of Insurance, and that the Certificate was issued in full compliance with the plan. The plan, INA asserts, specifies the extent of the obligation of INA to Graham, and INA maintains that it met that obligation.

The Court finds as a matter of law that Young-Clark was not the agent of INA in processing Graham's application, and could not bind INA to earlier coverage than that provided by the plan. Further, the Court finds that the documentation is unambiguous, and the coverage was to commence not earlier than 12:01 a.m. on September 6, 1978, after Graham's accident. As a result, INA's motion will be granted, Graham's motion will be denied, and the complaint will be dismissed with prejudice.

## II. DISCUSSION

### A. *The Status of Young-Clark*

Graham went to Young-Clark after several unsuccessful attempts to obtain regular insurance. He assisted in completion of the application, which stated above the line for his signature in capital letters "YOUR SIGNATURE ON THIS APPLICATION CERTIFIES THE FOLLOWING:". There then appeared the following pertinent language:

"I hereby agree to pay all premiums when due and designate *YOUNG-CLARK INSURANCE, LTD.* as producer of record for this insurance. I understand that he is not acting as an agent of any company for the purpose of this insurance and has no authority to bind such insurance."

Graham then signed his name on the signature line. It is noted that the plan itself provides that a commission for the insurance shall be payable "to a licensed producer designated by the insured." Plaintiff's Exhibit H, Section 21.

■ ■ Under the circumstances described herein, courts have uniformly held that the producer of record under an assigned risk plan is not the agent of the plan or any carrier who is associated with the plan. Indeed, courts have held that if the producer of record is the agent of anyone in connection with an application for coverage under an assigned risk plan, he is the agent of the applicant. The case oft cited for this position is Matsuo Yoshida v. Liberty Mutual Insurance Co., 240 F.2d 824, 828 (9th Cir. 1957). A case directly on point in regard to the status of a producer of record is Manufacturers Casualty Insurance Co. v. Hughes, 316 S.W.2d 827, 831–833 (Ark. 1958). It held that "any insurance agent who is approached to make the contract for any applicant desiring to obtain insurance under the Assigned Risk Plan, *acts as the agent of* the applicant rather than the agent of the insurer." (Emphasis in text.) This case is important as well because the fact situation involved an application for insurance under an assigned risk plan, and an accident which occurred after the application was mailed but before coverage became effective under the plan. Thus, it parallels Graham's situation.

Likewise, in Iowa National Mutual Insurance Co. v. Richards, 229 F.2d 210 (7th Cir. 1956) it was held that a producer of record under an assigned risk plan is not the agent of the insurer, but is the agent for the applicant. The reasoning behind these cases is uniform, and it applies to the case at bar: All insurance carriers who write automobile insurance in the state participate in the plan. "They are required to accept assigned risks on a rotating basis in rough proportion to the amount of voluntary business they write in the State. The assigned carrier may or may not be one with whom the 'producer of record' has previously dealt." Pearson v. Selected Risk Insurance Co., 381 A.2d 91, 93 (N.J. 1977). As a result, according to Pearson:

Where an insurer involuntarily undertakes to insure an assigned risk, the licensed broker who produces the business that is assigned to the insurer does not become an agent of the insurer . . . and the broker does not speak for the insurer in its relationship with the assigned risk.

Id.

■ The relevance of Pearson to the present case is obvious: the obligation of INA to provide coverage to Graham arises pursuant to the provisions of the plan. All parties agree that the plan provides that the earliest date that coverage would become effective is 12:01 a.m. of the day following the date of mailing of the application. In Graham's case, since the parties further agree that the application was mailed on September 5, 1978, the same day of the accident, coverage was effective at 12:01 a.m. September 6, 1978. Since Young-Clark was not INA's agent but rather Graham's for purposes of the assigned risk plan, it could not advance the effective date. Therefore, Graham was not insured by INA at the time of his accident.

### B. *The Unambiguity of the Documentation*

While the result reached above effectively ends the case against INA, nonetheless the Court is compelled to address the issue of the documentation which is the frontispiece of Graham's claim. Graham contends that the documentation, particularly the Certificate of Insurance, was ambiguous at best, and thus the issue of coverage is resolved in his favor. Further, it is his position that having paid his money and received the Certificate, he had a reasonable expectation of immediate coverage.

When Graham exited the Young-Clark office late that afternoon, having completed and signed the application to be a part of the assigned risk plan, and having received a Certificate of Insurance, he knew, or should have known:[3]

(1) He would be in the assigned risk plan, since he completed and signed the appropriate application for the plan. The Certificate of Insurance provided on its face that Graham would be in the plan, since the "V.I. Automobile Assigned Risk Plan" was typed on the line to identify the carrier. This was in conformity with footnote (1) at the bottom of the Certificate.

---

[3] Graham stated in his deposition of November 8, 1982, that he did not read the application, and he only perused the Certificate to assure his name and the vehicle to be insured were correctly inserted. Nonetheless, he is held responsible for reading these documents.

(2) His initial coverage would be by a binder, since that word was typed in the space to identify the policy number, in conformity with footnote (2) at the bottom of the Certificate.

(3) Since he would be in the assigned risk plan, his coverage would commence at 12:01 a.m. on the day following the date of mailing of the application of the plan, in conformity with footnote (3) at the bottom of the Certificate. Since he completed and signed the application on September 5, 1978, the earliest date on which coverage would commence was 12:01 a.m. of the next day, September 6, 1978.

(4) To reinforce the effective date as provided in footnote (3) at the bottom of the Certificate, on the line where it is to be indicated what the effective date of the coverage would be, there is typed "9/6/78–9/6/79".

■ Graham also knew that Young-Clark could not bind the coverage to an earlier date than September 6, 1978, since just above his signature on the application it clearly indicates that Young-Clark could *not* bind such insurance, and it was *not* the agent of any company for the purposes of the assigned risk plan. To repeat what was said earlier, the binding of coverage for Graham which would be coming from the assigned risk plan, could only be in accordance with the provisions of the plan. Moreover, the Certificate of Insurance clearly indicated the date of commencement of coverage under the assigned risk plan, and Graham is held responsible for knowing that.

Graham has conceded that he was not told anything other than what was contained in the application and the Certificate of Insurance. He did not ask for anything different, and he did not demand immediate coverage. He wanted to be part of the assigned risk plan in order to obtain coverage, and he obtained coverage according to that plan. The coverage he obtained was to commence approximately eight hours after he walked into Young-Clark. He could not wait; instead, he drove his unregistered vehicle and had an accident before that coverage commenced.

■ Since insurance coverage is a matter of contract, the Court's duty is to ascertain the intent of the parties, as manifested in the language of the agreement. See Couch on Insurance 2d, §§ 14.25, 15.3 (1959). See also Eastern Associated Coal Corp. v. Aetna Casualty & Surety Co., 632 F.2d 1068, 1075 (3d Cir. 1980), cert. denied, 451 U.S. 986 (1981) (based on Pennsylvania law). Graham urges that because he paid a full year's premium at the outset, and received a

Certificate of Insurance on September 5, 1978, his coverage should be deemed to have begun immediately. For that position he relies on the language of the Certificate of Insurance, which follows closely the statutory language of 20 V.I.C. § 707.[4] Specifically, the statute and the Certificate approved pursuant to § 707 use the present tense: "... there is in effect a motor vehicle liability policy ...."

■ According to Graham's argument, this use of the present tense in the Certificate creates an ambiguity as to when coverage attached, and this ambiguity should be resolved in favor of instant coverage. It should be remembered, however, to whom this information is being certified. According to § 707, it is to the Commissioner of Public Safety that such a certificate is directed. This means that when the certificate is filed as a legal document and therefore made a part of the public record, it is certified that the insurance is in force. Obviously, the Commissioner cannot accept such a document for filing *unless* the insurance is in effect because this would be tantamount to registering an uninsured vehicle in violation of law. Further, the precise statement of the effective date of the Certificate as September 6, 1978, vitiates Graham's argument. As the Third Circuit has stated, "[a] Court should not torture the language of the policy in order to create ambiguities which, in turn, could be construed in favor of the insured." Treasure Craft Jewelers v. Jefferson Insurance Co., 583 F.2d 650, 652 (3d Cir. 1978). Likewise, a court should read policy provisions to avoid ambiguities and not distort the language to create them. St. Paul Fire & Marine Insurance v. U.S. Fire Insurance Co., 655 F.2d 521, 524 (3d Cir. 1981).

Graham also argues that he had a reasonable expectation of immediate coverage, since he paid his money and received his insurance Certificate. This, however, is contradicted by the language of the Certificate. Therefore, since no oral representations were made, Graham's reasonable expectation could only extend to what the written document handed to him stated clearly on its face. Graham

---

[4] Section 707 provides:

 Proof of coverage by satisfactory liability insurance shall be furnished by filing with the Commissioner of Public Safety the written certificate of any insurance carrier duly authorized to do business in the Virgin Islands, certifying that there is in effect a motor vehicle liability policy for the benefit of the person required to furnish proof of coverage by satisfactory liability insurance. Such certificate the form of which shall be prescribed by the Commissioner of Insurance shall give the effective date of such motor vehicle liability policy, which date shall be the same as or earlier than the effective date of the certificate, and shall designate by explicit description or by appropriate reference all vehicles covered thereby.

had a reasonable expectation that coverage would commence at 12:01 a.m. September 6, 1978, in accordance with the assigned risk plan. That is unambiguously stated on the Certificate.

## CONCLUSION

The Court finds as a matter of law that Young-Clark was not the agent of INA for purposes of processing Graham's application for assigned risk coverage. Further, the Court finds that there is no ambiguity to the transaction, and Graham did not become covered by any policy of insurance until 12:01 a.m., September 6, 1978, at the earliest, in accordance with the assigned risk plan. INA's motion will be granted, Graham's motion will be denied. Summary judgment will enter dismissing plaintiff's complaint with prejudice.

## JUDGMENT

THIS MATTER is before the Court on cross-motions for summary judgment, there being no dispute as to the facts. The Court having filed its Memorandum Opinion of even date herewith, and the premises considered, now therefore it is

ORDERED:

THAT the motion of the plaintiff is DENIED; the motion of the defendant is GRANTED, and the plaintiff's complaint be and the same is hereby DISMISSED with prejudice.